[No. 30509.    *En Banc.*    October 15, 1948.]

THE STATE OF WASHINGTON, *on the Relation of Wes E. Verd,
Plaintiff*, v. THE SUPERIOR COURT FOR KING COUNTY,
*James T. Lawler, Judge, Respondent.*[1]

*Kellogg, Reaugh & Smith,* for relator.

*Church & Chamberlin,* for respondent.

HILL, J.—The Standard Lumber & Manufacturing Company is a Washington corporation with its registered office and sawmill at Carlsborg, Clallam county, Washington.

[1]Reported in 198 P. (2d) 663.

George W. Pankratz is president and manager of the corporation. He owned the mill at Carlsborg prior to incorporation and, both before and since the incorporation, has made it a practice to go to Seattle to sell lumber, the product of the mill, to Wes E. Verd, the relator, and perhaps to others.

On April 5, 1947, he called at Verd's office in Seattle and, on behalf of the corporation, agreed to sell and Verd agreed to buy certain lumber (nine carloads), with Verd's written order to follow. The written order was mailed on the next business day to Carlsborg, and there it was accepted by Pankratz, on behalf of the corporation, and returned to Verd.

Verd brought suit against the Standard Lumber & Manufacturing Company in King county, alleging that, because of the defective quality of the lumber furnished, he was compelled to make adjustments with his customers totaling $1,868.57.

The corporation requested a change of venue as a matter of right, relying on Rem. Rev. Stat., § 205-1, which provides:

"An action may be brought in any county in which the defendant resides, or, if there be more than one defendant, where some one of the defendants resides at the time of the commencement of the action. For the purpose of this act, the residence of a corporation defendant shall be deemed to be *in any county where the corporation transacts business* or has an office for the transaction of business or transacted business at the time the cause of action arose or where any person resides upon whom process may be served upon the corporation, unless hereinafter otherwise provided." (Italics ours.)

The judge of the superior court having indicated his intention of granting the change of venue, Verd has applied for a writ of prohibition.

Verd contends that, when Pankratz, the president and general manager of the corporation, sells lumber to him in his office in Seattle, the corporation is transacting business in King county, and a written order and acceptance are mere formalities. The position of the corporation and of the

respondent here is that what happened in Verd's office on April 5th was only incidental to the business of the corporation and constituted no more than negotiations, and that the sale was not consummated until the written order was accepted at Carlsborg. The single issue to be determined is whether the defendant corporation was transacting business in King county within the purview of Rem. Rev. Stat., § 205-1; or, more concretely, whether the solicitation and acceptance of business by the president and manager of the corporation constituted transacting business within the purview of that statute.

Both sides cite and rely upon *State ex rel. Anacortes Veneer v. O'Phelan*, 23 Wn. (2d) 142, 160 P. (2d) 515. We there quoted approvingly what we had said in *State ex rel. Guernsey-Newton Co. v. Superior Court*, 136 Wash. 653, 241 Pac. 303, adopting the rule as stated in 12 R. C. L. 71, § 49:

"Is the corporation engaged in the transaction of that kind of business, or any part thereof, for which it was created and organized? If so, it 'does business,' within the meaning of the constitutions and statutes."

That case was properly decided on the basis of that test. However, when the solicitation of sales is the activity in which the corporation is engaged, that rule represents an oversimplification of the problem of determining what constitutes doing or transacting business in a given locality. Our research has convinced us that the only general statement that will fit all the cases bearing on that question is that they are numerous, varied, and inharmonious. 23 Am. Jur. 336, § 361. The decision as to what constitutes transacting business necessarily depends upon the issues involved.

"The decisions on the question as to what constitutes doing business disclose a tendency on the part of some courts to treat the question as an indivisible one, overlooking the fact that the phrase 'doing business' does not and cannot have a uniform and unvarying meaning, but is governed largely by the connection and in view of the object of the statutes under construction or the particular issues involved. This tendency has been productive of much confusion. If the question relates to the right to subject a foreign corporation to the jurisdiction of the courts in the state through

service of process, the point presented is different from the one presented where it relates to the power of the state to impose conditions, restrictions, or regulations upon the corporation's activities in the state. If it relates to the right to impose a tax on the corporation, still different considerations may be pertinent, and a broader meaning may sometimes be attributed to the words 'doing business' as used in a tax statute, the fact that interests or activities of the corporation receive the protection of the local laws being of weight where this issue is involved." 23 Am. Jur. 339, § 362.

One of the purposes of the Standard Lumber & Manufacturing Company is

". . . to buy and sell, at wholesale and retail, logs, timber, lumber, shingles and other saw mill and shingle mill products and other products manufactured from timber and forest products of every kind."

No one can deny the truth of the statement by Mr. Justice Rutledge in the case of *Frene v. Louisville Cement Co.,* 77 U. S. App. D. C. 129, 134, 134 F. (2d) 511:

"*Solicitation is the foundation of sales.* Completing the contract often is a mere formality when the stage of 'selling' the customer has been passed. No business man would regard 'selling,' the 'taking of orders,' 'solicitation' as not 'doing business.' *The merchant or manufacturer considers these things the heart of business.*" (Italics ours.)

It would appear that the defendant corporation was carrying out its corporate purpose and was transacting business—at least from the standpoint of the businessman—on April 5, 1947, when the president and manager solicited and secured an order totaling nine carloads of lumber. As previously stated, the corporation and the respondent take the position that there was no contract of sale until the written order was received and accepted at Carlsborg.

*International Shoe Co. v. State,* 22 Wn. (2d) 146, 154 P. (2d) 801, will be of material assistance in the determination of the present case. The principal question there was whether or not the shoe company was doing business in the state of Washington so as to make it amenable to process of the courts of this state. In that case, between the majority opinion and the dissent, we get a thorough discussion

of the principles and holdings applying to the solicitation of sales as constituting the transaction of business. Both the majority and the minority seemed to be in accord that the "mere solicitation" of orders, if those orders have to be approved, accepted, and filled out of the state, is not sufficient to constitute doing business in the state so as to make a foreign corporation amenable to process herein. The majority, however, was of the opinion that the "mere solicitation" rule does not apply (1) if the solicitation by the corporation's agents was regular and systematic and had resulted in a continuous flow of its products into this state, or (2) if there were additional activities by the corporation's agents sufficient to bring the case within what is known as the "solicitation plus" rule.

The "solicitation plus" rule is well stated in *Dahl v. Collette*, 202 Minn. 544, 551, 279 N. W. 561, which we cited approvingly in the *International Shoe Company* case:

"Solicitation aided by further manifestations of corporate presence no one of which is singly capable of carrying the weight of the inference will warrant the conclusion that it is doing business here. . . .

"Solicitation in regular course of business, together with acceptance and performance of the contract within the state, will give ample ground for the conclusion of corporate presence. . . . Or if the solicitation results in a continuous flow of goods into the state and if payment therefor is made within the state, these factors altogether support the inference that the corporation is present doing business. . . . It has also been held that if regular and systematic solicitation concurs with a continuous flow of goods into the state the inference is permissible. . . . Solicitation joined with adjustment of complaints as a part of the ordinary course of business also sustains the inference. . . . *The substance of the cases seems to be that although the rule against the sufficiency of solicitation alone still persists, 'it readily yields to slight additions.'* " (Italics ours.)

See, also, *Frene v. Louisville Cement Co., supra,* in which it was said:

"It would seem, therefore, that the 'mere solicitation' rule should be abandoned when the soliciting activity is a regular, continuous and sustained course of business, as it is in this

case. It constitutes, in the practical sense, both 'doing business' and 'transacting business,' and should do so in the legal sense. Although the rule has not been clearly and expressly repudiated by the Supreme Court, its integrity has been much impaired by the decisions which sustain jurisdiction *when very little more than 'mere solicitation' is done.*" (Italics ours.)

This, likewise, was quoted with approval in the *International Shoe Company* case, *supra.*

The majority of this court was of the opinion that both of the exceptions to the "mere solicitation" rule were applicable to the *International Shoe Company* case. The minority did not recognize the first exception and did not believe the facts brought the case within the second exception. The minority, however, indicated willingness to apply the second exception where a foreign corporation has allowed its agents to make collections or to do some other item of local business, saying:

"In all of the other cases mentioned by the majority are to be found facts similar to those in the *Harvester Co.* case [234 U. S. 579, 58 L. Ed. 1479, 34 S. Ct. 944] in that the foreign corporation allows its agents to make collections or to do some other item of local business.

"This is especially true of *West Pub. Co. v. Superior Court,* 20 Cal. (2d) 720, 128 P. (2d) 777, in which it appears that the salesmen accepted an initial payment upon books sold and helped collect delinquent accounts."

We are not here concerned with the problem of whether a foreign corporation is transacting business in this state; we are concerned with whether a Washington corporation, having its registered office in Clallam county, is transacting business in King county. Certain portions of the opinions we have quoted have no direct bearing on our specific question, but they are important as they deal with the question of when and under what circumstances solicitation of business and the securing of orders constitute the transaction of business. We believe that the rules laid down in the *International Shoe Company* case to determine whether that company was doing business in the state of Washington are applicable to determine whether the Standard Lumber

& Manufacturing Company was transacting business in the county of King. We therefore accept the proposition that, if the Standard Lumber & Manufacturing Company was engaged in no more than "mere solicitation," as that rule is explained in the *International Shoe Company* case, it was not transacting business in King county.

■ We are next concerned with the problem of whether or not the Standard Lumber & Manufacturing Company was transacting business under either of the exceptions to the "mere solicitation" rule set forth and explained in the *International Shoe Company* case. In the absence of a stronger showing than was made here by the relator as to a regular and systematic program of solicitation of other customers carried on in King county, there may well be some doubt as to the applicability of the first exception to the rule to the present case. Relator merely "understands and alleges" that the corporation carried on business "in the same manner with three or four other Seattle customers." We believe, however, that there was solicitation-plus in this case, and that the additional circumstances were sufficient to bring the present case within the second exception to the rule. There is a marked difference between solicitation by a salesman, when any order he secures must be approved by the corporation, and solicitation by the manager and president of the corporation, who has the final word in the matter of approval.

We agree with the relator that, under the circumstances here existing, the sale was actually made in his office on April 5, 1947, and the sending of the written order to Carlsborg and its acceptance there by the president and manager of the corporation were formalities. The written order and acceptance was merely a memorandum evidencing the actual sale made in Seattle. Another pertinent circumstance was that Pankratz, on weekly trips to Seattle, took with him bills of lading covering lumber sold by the corporation to Verd, with drafts attached, for collection. And again, it may be, as the respondent says, that maintenance of an account in a Seattle bank does not constitute transacting business in King county, but we have much more than that; we have

the use of the bank for collection purposes, payments for lumber being made in Seattle, which payments were deposited to the account of the corporation in its Seattle bank. As pointed out by Mr. Justice Holmes, the fact that no one of several acts or transactions, considered separately, constitutes doing business is not conclusive:

"We cannot let the fagot be destroyed by taking up each item of conduct separately and breaking the stick. The activities and situation must be judged as a whole." *Edwards v. Chile Copper Co.*, 270 U. S. 452, 455, 70 L. Ed. 678, 46 S. Ct. 345.

We are of the opinion that, considering all of the facts in this case, with particular emphasis on the fact that the solicitation and the sale were made in King county by the president and general manager of the Standard Lumber & Manufacturing Company, the corporation was transacting business in that county within the purview of Rem. Rev. Stat., § 205-1, and its application for a change of venue from King county to Clallam county as a matter of right should have been denied.

■ We again point out what we sought to make clear in *State ex rel. Antonsen v. Superior Court*, 29 Wn. (2d) 725, 189 P. (2d) 219, *i.e.*, that applications for writs of prohibition or mandamus are not appropriate methods for securing the review of the actions of superior courts with reference to the granting or denying of motions for changes of venue. For the reasons stated in detail in that case, if the trial court had entered an order granting the change of venue in this case, the relator could have had that order reviewed by certiorari.

We will again regard substance rather than form, and consider the record before us as though it had been brought here by virtue of a writ of certiorari. The proceeding is remanded to the superior court for King county, with instructions to deny the motion of the Standard Lumber & Manufacturing Company for a change of venue.

MALLERY, C. J., BEALS, STEINERT, ROBINSON, and JEFFERS, JJ., concur.

Schwellenbach, J. (dissenting)—I dissent. To constitute "transacting business" in a county, by a corporation, there must be more than occasional solicitation in that county. That solicitation must be such that it is an integral part of the course of business of the corporation. That was not the case in this instance. Furthermore, it was distinctly under-stood between relator and the president of the corporation that the negotiations in relator's office in King county were merely preliminary to the actual entering into of the contract. Both parties should be bound by their own agreement.

The writ should be denied.

Millard and Simpson, JJ., concur with Schwellen-bach, J.