No. 26 April 24, 2014 297

IN THE SUPREME COURT OF THE
STATE OF OREGON

Richard A. KOHRING
and Kerstin Kohring,
*Plaintiffs-Adverse Parties,*

*v.*

James C. BALLARD, M.D.,
and Oregon Orthopedic & Sports Medicine Clinic, LLP,
*Defendants-Relators.*

(CC1111-14966; SC S060533)

En Banc

Original proceeding in mandamus.*

Argued and submitted April 30, 2013.

Janet M. Schroer of Hart Wagner LLP, Portland, argued the cause and filed the brief for defendants-relators. With her on the brief was Marjorie A. Speirs.

Kathryn H. Clarke, Portland, argued the cause and filed the brief for plaintiffs-adverse parties. With her on the brief was Phillip C. Gilbert, Gresham.

Lindsey H. Hughes and Hillary A. Taylor of Keating Jones Hughes, P.C., Portland, filed the brief for *amicus curiae* Oregon Association of Defense Counsel.

Scott A. Shorr of Stoll Stoll Berne Lokting & Shlachter, P.C., Portland, filed the brief for *amicus curiae* Oregon Trial Lawyers Association.

LANDAU, J.

Peremptory writ of mandamus to issue ordering trial court to grant defendants' motion to change venue.

_____
* On petition for alternative writ of mandamus from an order of Multnomah County Circuit Court, Karin Immergut, Judge.

**LANDAU, J.**

The issue in this mandamus proceeding is whether the trial court correctly denied defendants' motion to change venue. ORS 14.080(2) provides that venue is proper wherever a defendant engages in "regular, sustained business activity." In this case, plaintiffs, a husband and wife, initiated a medical malpractice action against defendants in Multnomah County. Defendants argue that venue lies in Clackamas County, because that is where the clinic is located, where the doctor who provided the husband's medical services resides, and where the husband received treatment. Plaintiffs argue that venue is proper in Multnomah County, because defendants solicit patients who live in that county, refer patients to imaging facilities in that county, use medical education programs in that county, and "identify" the clinic's location in its website as the "Portland area." The trial court denied defendants' motion, explaining that defendants, by soliciting patients in Multnomah County, "purposely availed themselves of the court's jurisdiction" in that county. We conclude that the trial court mistakenly conflated personal jurisdiction considerations with the statutory requirements for venue and erred in denying defendants' motion. We therefore issue a peremptory writ of mandamus ordering the trial court to grant defendants' motion to change venue.

## I.   BACKGROUND

The relevant facts are few and undisputed. Plaintiff Richard Kohring sustained injuries following hip replacement surgery at a medical facility in Clackamas County. Plaintiff and his wife initiated a medical malpractice action in Multnomah County for those injuries and for loss of consortium. Plaintiffs named as defendants Ballard, the surgeon who performed the hip replacement operation, and the clinic that employs him, Oregon Orthopedic & Sports Medicine Clinic, LLP ("Oregon Orthopedic" or "clinic").

Defendants moved to change venue to Clackamas County. In support of that motion, they argued that the medical care that gave rise to the action occurred in Clackamas

County; that defendant Ballard lives in Clackamas County; that both of Oregon Orthopedic's two clinics are located in Clackamas County; that all of the clinic's physicians provide medical care in Clackamas County; that neither the clinic nor Ballard reside in Multnomah County; that no authorized agent to receive service for either defendant resides in Multnomah County; that, in fact, plaintiffs served defendants in Clackamas County; and that neither the clinic nor Ballard conduct "regular sustained business activity" within the meaning of ORS 14.080(2) in Multnomah County.

Plaintiffs opposed the motion, arguing that defendants do conduct regular, sustained business activity in Multnomah County. In support of that assertion, they offered evidence that, among other things, approximately 600 of the clinic's 24,000 patients reside in Multnomah County; that Oregon Orthopedic uses "pdxortho.com" as its website; that Oregon Orthopedic refers to its clinics as being located "just outside Portland, Oregon"; that, over a two-year period, its physicians met with attorneys who practice in Multnomah County; that, over a five-year period, clinic employees have attended more than 100 educational seminars conducted in Multnomah County; that Oregon Orthopedic advertises in a newspaper and a telephone book that are distributed in Multnomah County; that the clinic refers some of its patients to imaging centers located in Multnomah County; and that defendants send chocolates to medical clinics located in Multnomah County, and have provided lunches to another Multnomah County clinic.

At the hearing on defendants' motion to change venue, the trial court noted the lack of Oregon case law discussing the meaning of "regular, sustained business activity" under ORS 14.080(2). It explained that it found guidance, though, in certain federal and Washington state cases concerning what constitutes "transacting business." In particular, the court mentioned a Washington Supreme Court decision, *State ex rel. Verd v. Superior Court for King County*, 31 Wash 2d 625, 198 P2d 663 (1948), which the court read to hold that "solicitation can constitute the regular, continuous and sustained course of business." In light of that case law, the court concluded that "a necessary part of the

business of providing medical care is soliciting patients," and that Oregon Orthopedic did just that in advertising in Multnomah County. The court explained that defendants "purposefully availed themselves of the court's jurisdiction" and are therefore "conducting regular sustained business activity in Multnomah County by marketing Multnomah County patients." The trial court denied defendants' motion to change venue.

Defendants petitioned for a writ of mandamus, challenging the trial court's denial of their motion to change venue. This court issued an alternative writ ordering a stay of the trial proceedings until the trial court either granted defendants' motion to change venue or showed cause for not doing so. The trial court did not grant defendants' motion to change venue, and the parties filed their briefs before this court.

## II.   ANALYSIS

ORS 14.110 provides:

> "(1)   The court or judge thereof may change the place of trial, on the motion of either party to an action or suit, when it appears from the affidavit of such party that the motion is not made for the purpose of delay and:

> "(a)   That the action or suit has not been commenced in the proper county[.]"

Notwithstanding the permissive wording of ORS 14.110(a), this court has held that defendants have a "right" to insist on proper venue under that statute. *Rose v. Etling*, 255 Or 395, 399, 467 P2d 633 (1970). Thus, when a civil action has not been filed in the proper county, and a party files a timely motion under ORS 14.080(1)(a) to change venue that is not for the purpose of delaying the litigation, the trial court has no discretion to deny the motion; if the trial court denies the motion, a defendant may proceed by mandamus to enforce the right to change venue. *Roskop v. Trent*, 250 Or 397, 400, 443 P2d 174 (1968) ("the remedy for an erroneous refusal to change the venue is by way of mandamus"); *Mack Trucks, Inc. v. Taylor,* 227 Or 376, 382, 362 P2d 364 (1961) ("[T]he defendant's only remedy is a motion for change of venue. If the court rules against him and he wishes to pursue the

matter further, he must then proceed by mandamus in this court to force the trial court to change the venue.").[1]

The standard for determining the proper place of trial is set out in ORS 14.080, which provides:

"(1)  All other actions shall be commenced in the county in which the defendants, or one of them, reside at the commencement of the action or in the county where the cause of action arose. * * *

"(2)  For purposes of this section a corporation incorporated under the laws of this state, a limited partnership or a foreign corporation authorized to do business in this state shall be deemed to be a resident of any county where the corporation or limited partnership conducts *regular, sustained business activity* or has an office for the transaction of business or where any agent authorized to receive process resides. A foreign corporation or foreign limited partnership not authorized to transact business in this state shall be deemed not to be a resident of any county in this state."

(Emphasis added.) The statute thus defines where a corporation "resides" for venue purposes in terms of three possibilities: (1) where the corporation conducts "regular, sustained business activity," (2) where the corporation "has an office for the transaction of business," or (3) where an agent authorized to receive service of process resides. In this case, it is undisputed that defendants do not have an office for the transaction of business in Multnomah County and that defendants have no agent authorized to receive service in Multnomah County. The parties' dispute focuses on whether defendants conduct "regular, sustained business activity" in Multnomah County.

Defendants argue that they do not conduct "regular, sustained business activity" in Multnomah County. In their view, the statute refers to activity that is part of an entity's "normal," "core," or "typical" occupation, and, in this case, that is the provision of medical care. According to

---

[1] In contrast, ORS 14.110(1)(c) authorizes a trial court to change venue because "the convenience of witnesses and the parties would be promoted by such a change[.]" That determination requires the exercise of discretion and, as such, is not subject to review by way of mandamus. *State ex rel Douglas County v. Sanders*, 294 Or 195, 198 n 6, 655 P2d 175 (1982).

defendants, the statutory phrase does not refer to such activities as meeting with attorneys, attending training sessions, referring patients, and sending gifts to other businesses, because those activities are not part of the normal or typical occupation of a medical clinic. They contend that it also cannot include advertising and solicitation of potential clients, because that improperly shifts the focus from where a defendant resides to where potential plaintiffs might reside, which they contend is more appropriate to personal jurisdiction analysis than to venue.

Plaintiffs argue that the phrase "regular, sustained business activity" refers to any activity of a business—regardless of whether it is in some sense the "core" or "normal" occupation—so long as it is "regular" and "sustained," that is, so long as it occurs on a regular basis over time. In this case, they contend, any number of activities related to defendants' business has occurred on a regular basis over time in Multnomah County.

The parties' arguments thus present us with an issue of statutory construction, which we resolve by applying the familiar principles set out in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 859 P2d 1143 (1993), and *State v. Gaines*, 346 Or 160, 206 P3d 1042 (2009). In accordance with those interpretive principles, we seek the meaning of the disputed phrase that the legislature most likely intended when it adopted ORS 14.080(2) by examining the text of the statute in context, along with any relevant legislative history, and, if necessary, pertinent canons of construction. *Gaines*, 346 Or at 171-73.

A.   *Textual Analysis*

We begin with the text. ORS 14.080(2) does not define the phrase "regular, sustained business activity," so, assuming that the legislature intended to use those words in their ordinary senses, we resort to dictionary definitions to give these words their "plain, natural, and ordinary meaning." *PGE*, 317 Or at 611; *State v. Murray*, 340 Or 599, 604, 136 P3d 10 (2006). In this case, the parties' dispute centers on the meanings of the words "regular," "sustained," and "business."

The word "regular" can mean "formed, built, arranged, or ordered according to some established rule, law, principle, or type"; "NORMAL, STANDARD." *Webster's Third New Int'l Dictionary* 1913 (unabridged ed 2002).[2] It also can mean "steady or uniform in course, practice, or occurrence: not subject to unexplained or irrational variation: steadily pursued." *Id.* Thus, the word can be used in either of two distinct senses, one connoting a particular quality of activity and the other connoting the frequency with which an activity occurs. *See, e.g., Burkhart v. Farmers Ins. Co,* 144 Or App 594, 599, 927 P2d 1111 (1996) ("The words 'regular' and 'regularly' have at least two different and distinct uses. An example of the first is 'Joe is a regular guy who behaves in a regular manner.' An example of the second is 'Joe is a regular consumer of American products.'").

We do not interpret statutes solely on the basis of dictionary definitions, however. *State v. Cloutier*, 351 Or 68, 96, 261 P3d 1234 (2011) ("In construing statutes, we do not simply consult dictionaries and interpret words in a vacuum."). Instead, we examine word usage in context to determine which among competing definitions is the one that the legislature more likely intended. *State v. Fries*, 344 Or 541, 547-48, 185 P3d 453 (2008) (context determines which of multiple definitions is the one the legislature intended).

In this case, ORS 14.080(2) joins the word "regular" with the word "sustained," which, as we note below, already connotes the latter concept of frequency. The assumption that the legislature does not ordinarily employ such redundancy suggests, then, that the former meaning is more likely the intended one—that is, the concept of a particular quality of activity. *See Crystal Communications, Inc. v. Dept. of Rev.,*

---

[2] This court consults *Webster's Third* more often than any other dictionary. *See, e.g., State v. Reinke*, 354 Or 98, 107, 309 P3d 1059, *adh'd to as modified on recons*, 354 Or 570, 316 P3d 286 (2013) (resorting to *Webster's Third* as the source of "ordinary" meaning); *Dept. of Rev. v. Faris*, 345 Or 97, 101, 190 P3d 364 (2008) (same). It has never explained that preference. Most likely, it is rooted in the assumption that legislatures use words in their ordinary senses, and *Webster's Third* is a dictionary with a "descriptive" focus, reporting ordinary usage, as opposed to other dictionaries with a "prescriptive" focus, reporting "correct" usage. *See generally Dictionaries and That Dictionary* (James Sledd & Wilma Ebbit eds 1962) (describing critiques of *Webster's Third* on the ground that it described actual, instead of correct, usage).

353 Or 300, 311, 297 P3d 1256 (2013) ("As a general rule, we construe a statute in a manner that gives effect, if possible, to all its provisions.").[3]

The word "sustained" is straightforward. It refers to an activity that is "maintained at length without interruption, weakening, or losing in power or quality**:** PROLONGED, UNFLAGGING." *Webster's* at 2304. In the context of ORS 14.080, it seems clear that the legislature did not intend the term to be understood literally. Few, if any business activities are conducted literally "without interruption." Rather, the extent to which a given activity is "sustained" necessarily depends on the nature of the activity. Weekly meetings that occur over a long time may safely be regarded as "sustained," for example.

The word "business" also has a wide variety of definitions, including:

"**1a** \*\*\* purposeful activity **:** activity directed toward some end \*\*\* an activity engaged in toward an immediate specific end and usu. extending over a limited period of time **:** TASK, CHORE, MISSION, ASSIGNMENT \*\*\* **b** (1) **:** a usu. commercial or mercantile activity customarily engaged in as a means of livelihood and typically involving some independence of judgment and power of decision \*\*\*and sometimes contrasted with the arts \*\*\* or professions \*\*\* or sport \*\*\* or other activity considered less practical, serious, respectful, or mundane \*\*\*[;] OCCUPATION, POSITION, TRADE, LINE (2) **:** a commercial or industrial enterprise \*\*\* (3) **:** a place where such an enterprise is carried on \*\*\* (4) **:** transactions, dealings, or intercourse of any nature \*\*\* **c :** serious activity that requires time and effort and usu. the avoidance of distracting influences \*\*\* **d :** a particular field of endeavor \*\*\* **2a :** AFFAIR, MATTER \*\*\* **b :** a difficult or complicated matter **:** PROJECT."

---

[3] The assumption, of course, is not a hard-and-fast rule. Sometimes—for clarity or emphasis, for example—the legislature intends to employ a measure of redundancy. *See, e.g.*, *Cloutier*, 351 Or at 97 ("Redundancy in communication is a fact of life and of law."); *Thomas Creek Lumber and Log Co. v. Dept. of Rev.*, 344 Or 131, 138, 178 P3d 217 (2008) ("[N]othing prohibits the legislature from saying the same thing twice[.]"). In this case, there is no evidence of such intent.

*Webster's* at 302. In the context of ORS 14.080(2), however, it seems clear that the legislature used the term in the sense of a usually "commercial or mercantile activity customarily engaged in as a means of livelihood" or a "commercial or industrial enterprise," as opposed to any "purposeful activity." The statute's focus, after all, is the residence of a corporation incorporated under the laws of this state, a limited partnership, or a foreign corporation authorized to "do business" in the state.

From an analysis of the text of ORS 14.080(2), then, this much seems clear: The legislature intended that not just any activity suffices to establish corporate residence for venue purposes. Under ORS 14.080(2), only activity that is a "regular" and "sustained" part of the "business" is sufficient. That strongly suggests that an evaluation of both the qualitative nature of the business activity and the frequency with which it occurs is required. In terms of the quality of the activity, it must be normal and ordinary in the light of the nature of the particular commercial or industrial enterprise. It must be something more than incidental to the ordinary operation of the enterprise. In terms of its frequency, the activity must occur often enough to be sustained; it is not sufficient if the activity is only infrequent and occasional.[4]

---

[4] It is perhaps worth noting that a number of other states use the same or similar terminology in their venue statutes. *See generally* Gregory J. Swain, *Place Where Corporation is Doing Business for Purposes of State Venue Statute*, 42 ALR 5th 221 (1996). Among those states, there appears to be something of a consensus that "doing business," or "regularly transacting business," or similar terms, exclude "mere solicitation" and other activities that are incidental or peripheral to the normal, ordinary activities of the corporation. *See, e.g., King Motor Company, Inc. v. Capps*, 540 So 2d 62 (Ala 1989) (solicitation and advertisements in yellow pages, newspapers, radio, and television not sufficient to establish venue); *City Stores Co. v. Williams*, 287 Ala 385, 252 So 2d 45 (1971) (department store advertisements in one county held not "doing business" there when the transactions would ultimately be consummated elsewhere); *Baltimore & OR Co. v. Mosele*, 67 Ill 2d 321, 333, 368 NE2d 88 (1977) ("The long-standing rule in Illinois is that the mere solicitation of business is not 'doing business.'"); *Saba v. Gray*, 111 Mich App 304, NW2d 597 (1981) (advertising in newspaper that had some circulation in Wayne County was not "conducting business" for venue purposes); *Purcell v. Bryn Mawr Hosp.,* 525 Pa 237, 248, 579 A2d 1282 (1990) ("Mere solicitation of business in a particular county does not amount to conducting business."); *Deeter-Ritchey-Sippel Associates v. Westminster College*, 238 Pa Super 194, 357 A2d 608 (1976) (solicitation of funds and recruiting not regular business of college for venue purposes); *Westmoreland Coal Co. v. Kaufman*, 184 WVA 195, 399 SE2d 906 (1990) (hiring attorney is incidental and does not constitute "doing business" for venue purposes).

B.   *Legislative History*

Nothing in the legislative history of ORS 14.080(2) suggests that the Oregon legislature intended something different from what we have noted the text suggests.

1.   *Background: Early Venue Statutes and Case Law*

Modern venue rules are predominantly statutory, but they derive from early common-law principles. *See generally* Robert C. Casad and Laura J. Hines, *Jurisdiction and Forum Selection* § 426 at 4-88 (2d ed 2012). At common law, courts distinguished between "local" actions, usually those involving real property, and "transitory" actions, usually involving disputes over goods and chattels. *See generally* William Wirt Blume, *Place of Trial of Civil Cases: Early English and Modern Federal*, 48 Mich L Rev 1, 23-25 (1949). Common-law courts required local actions to be tried where the property was located, while transitory actions could be "laid" anywhere that personal jurisdiction over the defendant could be obtained. *Id.*

Oregon's first venue statute was patterned after that tradition. Actions for the recovery of property were to be tried "in the county in which the subject of the action or some part thereof is situated." General Laws of Oregon, Civ Code, ch I, title IV, § 41, p 147-48 (Deady 1845-1864). In other, transitory, cases, the action was to be tried where the defendant resided or could otherwise be found:

> "In all other cases, the action shall be commenced and tried in the county in which the defendants or either of them reside, or may be found, at the commencement of the action; or if none of the parties reside in this state, the same may be tried in any county which the plaintiff may designate in his complaint."

---

Depending on the nature of the business at issue, such activities as solicitation can nevertheless be relevant, as when the orders solicited are actually filled or completed at the place where the solicitation occurred. *See, e.g.*, *Canter v. American Honda Motor Corp.*, 426 Pa 38, 231 A2d 140 (1967) (newspaper and radio advertising followed by personal appearances to demonstrate vehicles constitutes "regularly conduct[ing] business" for venue purposes); *Verd*, 31 Wash 2d at 629, 198 P2d at 665 ("'Solicitation in regular course of business, together with acceptance and performance of the contract *** will give ample ground for the conclusion of corporate presence.'" (citation omitted)).

*Id.* § 43, p 148. The early venue statute made no mention of corporations; it simply referred to "defendants" generally.

In 1876, the legislature added a provision concerning the method of service of process on corporate entities. Under the new provisions, corporations could be served by delivering a copy of the complaint on the managing agent or other corporate officers where they reside, "or in case none of the officers of the corporation above named shall reside or have an office in the county when the cause of action arose," then by leaving a copy at "the residence or usual place of abode of such clerk or agent." The Codes and General Laws of Oregon, ch I, title V, § 55 (Hill 1887).

The Oregon Supreme Court first addressed how those statutes applied to corporate entities in *Holgate v. O.P.R.R. Co.*, 16 Or 123, 17 P 859 (1888), *overruled in part on other grounds by Mutzig v. Hope*, 176 Or 368, 158 P2d 110 (1945). In that case, the court concluded that, under the venue provision, "[t]he residence of the corporation, if an artificial person can be said to have a residence, must be deemed to be * * * where it has its principal office and place of business, and where it is required to pay its taxes." *Id.* at 125. But, in addition, the court held that the 1876 service-of-process amendments implicitly assumed that venue also is proper in the county in which the action arose. *Id.* at 125-26.

In 1909, the legislature essentially codified the court's holding in *Holgate*, at least as to tort actions. The amendment was part of a legislative package that the legislature found necessary to respond to the fact that "irresponsible and dishonest persons have instituted or are about to institute actions in counties many miles distant from the place of residence of the defendants thereto on mere pretexts for the sole purpose of annoying said defendants and putting them to unjust and unnecessary expense." Or Laws 1909, ch 43, § 2. The new legislation modified the venue statute to read:

> "In all other cases [than local actions] the action shall be commenced and tried in the county in which the defendants or either of them reside or may be found at the commencement of the action; *provided* that in any action founded on

an alleged tort, unless the same is instituted in the county where the cause of action arose or where the defendants or one of them resides, then, either such action shall at any time before trial thereof be transferred, upon motion of defendants, to a county where at least one of the defendants thereto resides; or the plaintiff in such action shall file a good and sufficient bond securing to defendants the payment of any judgment that may be rendered therein in favor of said defendants and against plaintiff[.]"

*Id.* § 1 (emphasis in original).

In 1929, the legislature eliminated supplying a bond as an alternative to transferring venue in tort actions. Or Laws 1929, ch 239 § 1. From that point until 1983, an action against a corporation could lie either where the corporation resides—that is, the county of its principal place of business—or where the cause of action arose. *See, e.g., Hope*, 176 Or at 388 (referring to "the firmly established doctrine of this state to the effect that a domestic corporation can be sued only in the county where its principal place of business is located, or where the cause of action arose"); *State ex rel. v. Updegraff*, 172 Or 246, 256, 141 P2d 252 (1943) ("In our opinion, the only proper venue of transitory actions against foreign corporations is either the county where they maintain their principal place of business or that in which the cause of action arose.").

Throughout that time, the court emphasized "the general rule that statutes relating to the right to change the venue of actions filed in the wrong place are to be liberally construed so as to attain the objectives of such statutes." *Etling*, 255 Or at 400 (footnote omitted). In reference to those objectives, the court cited cases from other jurisdictions, noting that the purpose of venue statutes has always been to ensure fairness to defendants by preventing them from being haled into court in counties where they have little or no connection. *Id.* at n 6.

2. *Enactment History of ORS 14.080(2)*

That was the state of the law as of 1983, when the Oregon legislature adopted the venue statute that is now ORS 14.080. The bill that became ORS 14.080 was first introduced as Senate Bill (SB) 198 (1983). The bill was proposed

by the Oregon State Bar. As originally introduced, SB 198 provided that, for purposes of venue, a corporation or limited partnership resides in "any county where the corporation or limited partnership transacts business." University of Oregon Law School Professor Fred Merrill, representing the Bar, explained to a Senate committee that the bill was designed to allow suit not only where the corporation has its principal place of business, but also "any place where it does business, which would be broader." Tape Recording, Senate Committee on Local Government and Elections, SB 198, Feb 9, 1983, Tape 14, Side A (statement of Fred Merrill).[5]

The bill passed out of the Senate with little debate and was referred to the House Judiciary Committee. When the bill was taken up by that committee, another representative of the Bar, Diana Godwin, similarly explained that it was intended to "clean[] up and partly expand[]" ORS 14.080. Tape Recording, House Committee on Judiciary, SB 198, Apr 18, 1983, Tape 250, Side A (statement of Diana Godwin).

At that point, however, the bill ran into opposition from representatives of the business community who complained that the bill defined corporate residence too broadly. During the hearing before the House Judiciary Committee, committee counsel Kirk Hall said that a member of the banking industry had spoken with him about amending SB 198 "to get at the problem of allowing venue anywhere the corporation does business." Minutes, House Committee on Judiciary, SB 198, April 18, 1983, 3.

The matter was referred to a subcommittee of the House Judiciary Committee. In that subcommittee, an amendment was proposed to change the definition of

---

[5] The original version of the bill was modeled after *former* 28 USC § 1391(c) (1982), which provided that "[a] corporation may be sued in any judicial district in which it is incorporated or licensed to do business or is doing business, and such judicial district shall be regarded as the residence of such corporation for venue purposes." Congress amended the statute in 1988 so that it currently provides that venue is proper "in any judicial district in which any defendant resides." 28 USC § 1391(b). The statute then provides that the "residence" of a defendant is "any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to that action." *Id.* § 1391(c). *See generally* Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, 14D *Federal Practice and Procedure:* Jurisdiction 3d § 3811 (2007).

corporate residence from wherever it "transacts business" to wherever it engages in "regular, sustained business activity." At a hearing before the subcommittee, Hall explained that

> "there was some concern that the phrase 'transact business' could mean that *** a business entity that maybe did some business in a particular county of the state *** on an irregular basis, didn't have an office there *** might still be subject to venue in some county that otherwise it had virtually no contacts with other than occasional business transactions. So the suggested change—instead of transact business—is 'conducts regular, sustained business activity' simply to raise the threshold a little bit, and this is acceptable to Professor Merrill and his group."

Tape Recording, House Committee on Judiciary Subcommittee 2, May 3, 1983, Tape 288, Side A (statement of Kirk Hall). As Hall noted, the change was intended to "raise the threshold a little bit" for the benefit of defendants. *Id.* Those amendments were adopted without objections, and the bill as amended was passed by the legislature without further discussion of that issue.

The legislative history thus makes clear that, while SB 198 was intended to "partly expand" the definition of corporate residence for venue purposes, the legislature rejected wording that would have defined corporate residence in terms of *any* place that the corporation or limited partnership does business. Instead, it adopted wording that was intended "to raise the threshold" and exclude activities that amount to doing only "some business" on an "irregular basis" where the corporation or limited partnership had "virtually no contacts" other than "occasional business transactions." *Id.*

To be sure, the foregoing legislative history consists principally of statements of nonlegislators, which sometimes provides limited assistance in determining the *legislature's* intent. *See, e.g.*, *State v. Guzek,* 322 Or 245, 260, 906 P2d 272 (1995), *rev'd on other grounds*, *State v. Moore*, 324 Or 396, 927 P2d 1073 (1996) (noting that the testimony of a single nonlegislator says little "about the intent of the Oregon Legislative Assembly as a whole"). In some cases, however,

it is appropriate to give greater weight to such legislative history, as when the nonlegislators were the drafters and principal proponents of a bill, and it is clear that the legislature relied on their explanations. *See, e.g.*, *Assoc. Unit Owners of Timbercrest Condo. v. Warren*, 352 Or 583, 596-97, 288 P3d 958 (2012) (relying on testimony of a representative of the Oregon State Bar regarding a bill proposed by the Bar); *State ex rel Engweiler v. Felton*, 350 Or 592, 626-27, 260 P3d 448 (2011) (considering statements made by the Chair of the Board of Parole, proponent of the bill at issue); *Snider v. Production Chemical Manufacturing, Inc.*, 348 Or 257, 266-67, 230 P3d 1 (2010) (considering testimony from a representative of the Oregon State Bar, the proponent of the bill).

In short, the legislative history confirms what the text of ORS 14.080(2) suggests. Although the legislature intended to expand the definition of corporate residence for venue purposes to cover more than just a single "principal place of business," it also intended to limit corporate residence to those places where an enterprise conducts its normal, ordinary business activities on a sustained basis.

C.   *Application*

With the foregoing in mind, we turn to the trial court's denial of defendants' motion to change venue. As we have noted, the trial court, finding no controlling Oregon case law, relied on the Washington Supreme Court's decision in *Verd* in concluding that the determination of corporate residence for venue purposes is essentially the same as the evaluation of the sufficiency of business contacts for personal jurisdiction purposes. Based on a personal jurisdiction analysis, the trial court then concluded that defendants' solicitation and advertising activities constituted "purposely avail[ing]" themselves of the court's jurisdiction in Multnomah County, and that such purposeful availment suffced to establish their residency for venue purposes.

In so doing, the trial court erred. First, personal jurisdiction and venue are not the same thing. Jurisdiction refers to the authority of the court to hale a defendant into court, while venue concerns the particular location where it is appropriate for the court to exercise that authority. *See*

*generally* Casad & Hines, *Jurisdiction and Forum Selection* § 426 at 4-87 ("A defendant who has the requisite contacts to a state may be subject to personal jurisdiction in every court of that state, but the venue rules will designate one or more counties or districts as the place where the action *should* be brought." (Emphasis in original)).

As we have noted, the current *federal* definition of corporate residence for venue purposes does equate venue and personal jurisdiction. Many states, however, define venue to require more than just the minimum contacts necessary to establish personal jurisdiction. *See generally* Swain, *Place Where Corporation is Doing Business for Purposes of State Venue Statute*, 42 ALR 5th at 237-38. And nothing in the wording of ORS 14.080(2) or its legislative history suggests that the Oregon legislature intended to define corporate residence for venue purposes to extend to any place where personal jurisdiction would lie.

Second, on its own terms, *Verd* is distinguishable. In that case, the Washington Supreme Court recognized that, even for personal jurisdiction purposes, the "mere solicitation" of orders does not suffice. 31 Wash 2d at 629, 198 P2d at 665. The court explained that only "if the solicitation by the corporation's agents was regular and systematic and had resulted in a continuous flow of its products into this state," or if "there were additional activities by the corporation's agents"—in particular, "acceptance and performance of the contract within the state"—would solicitation be sufficient to establish jurisdiction. *Id*.

In this case, there is no such "regular and systematic flow" of products or services into Multnomah County. Nor did defendants' solicitation and advertising activities result in acceptance and performance in Multnomah County. To the contrary, it is undisputed that all of defendants' medical services were rendered in Clackamas County only.

The question remains whether, using a proper analysis under ORS 14.080(2), the trial court's denial of defendants' motion nevertheless was correct. As we have noted, plaintiffs contend that a number of activities establish the sort of "regular, sustained business activities" that ORS 14.080(2) requires. We conclude that none of those

activities, individually or collectively, establishes what the statute requires.

We begin with evidence that 600 of Oregon Orthopedic's patients reside in Portland. At the outset, it is debatable that such a relatively small portion of defendants' clientele—2.5 percent—is sufficient to satisfy the statute's requirement of "regular, sustained business activities." *See, e.g.*, *Hernandez v. East Coast Barge and Boat Co.*, 85 Va Cir 103, 103 (2012) (finding a lack of substantial business activity for venue purposes for revenue or expenditures below 10 percent). We need not decide that, however, because where defendants' patients happen to reside is not a "business activity" that is "conducted" by defendants. If, for instance, one of defendants' patients traveled from her residence in Uruguay to receive medical services in Clackamas County, defendants would not have conducted any business activities in Uruguay. The focus of ORS 14.080(2) is defendants' activities not their patients' place of residence.[6]

We turn to defendants' advertising and solicitation activities. The record shows that Oregon Orthopedic advertised in three ways. First, it maintained a web page in which it referred to its location as being near Portland and listed its site as "pdxortho.com." Second, it posted seven job openings in the *Oregonian* newspaper in 2007. Third, over a period of five years, it advertised in the local yellow pages telephone directory that is distributed in, among other places, Multnomah County.

We begin by noting that the fact that defendants' advertising refers to "Portland" or "pdx" hardly establishes that they conduct regular, sustained business activity in Multnomah County. The City of Portland, after all, is located in three different counties—Multnomah, Clackamas, and Washington. We also conclude that seven job postings in 2007—even assuming for the sake of argument that they constitute "regular" business activities—do not amount to the sort of "sustained" business activity that ORS 14.080(2) requires.

---

[6] That is not to say that where a patient or customer resides is always irrelevant. In the case of a doctor who makes house calls, for example, or a plumber or electrician who provides services in a customer's home, patient or customer residence is relevant, because it determines where the business activities occur.

Aside from that, defendants' advertising in the yellow pages directory and its posting of occasional job openings is not a "regular" part of defendants' business in this case. That is not to say that advertising and solicitation are never relevant. Their relevance will depend on the nature of the business at issue and where products and services are actually provided. In this case, defendants' advertising and solicitation are incidental to their regular business activity.

That only makes sense. If where a business advertises determines its corporate residence for venue purposes, then advertising (particularly with the advent of the Internet) would subject it to legal action anywhere that personal jurisdiction could be established. As we have noted, nothing in the text or legislative history of ORS 14.080(2) suggests that the legislature intended that.

Plaintiffs also rely on the fact that some of the physicians who work at Oregon Orthopedic conferred with attorneys who practice in Multnomah County for the purpose of providing information in relation to patients' workers' compensation claims. It is debatable whether such meetings are "regular" business activities of defendants. *See, e.g.*, *Westmoreland Coal Co.*, 399 SE2d at 906 (hiring attorney is incidental and does not constitute "doing business" for venue purposes). Nor is it beyond dispute that such activities were "sustained" within the meaning of the statute. But we need not resolve those uncertainties, because the record establishes that only one of those meetings actually took place in Multnomah County.[7]

Plaintiffs contend that some physicians who work for Oregon Orthopedic attended educational seminars that were offered in Multnomah County. The record does show that, during a five-year period, Oregon Orthopedic sent employees to 68 educational seminars and 44 continuing medical education seminars that took place in Multnomah County. We conclude that a total of 112 seminars over

_____

[7] The record on this point consists of a declaration of defendants' counsel listing 39 meetings concerning mostly workers' compensation claims that occurred between January 2010 and May 2012. In nine instances—each referring to a physician giving deposition or trial testimony—the location of the meeting is included. And, in all but one of those instances, the location was outside of Multnomah County.

a course of five years is not the sort of "sustained" activities contemplated by ORS 14.080(2). Moreover, there is no evidence that defendants conducted the seminars. Merely attending a seminar put on by someone else is not a business activity that defendants "conducted."

Plaintiffs also rely on evidence that Oregon Orthopedic has referred patients to medical imaging centers located in Multnomah County. That defendants may refer some of its patients to other medical service providers located in Multnomah County, however, does not constitute a business activity of defendants conducted there. Moreover, the record is silent on the number of such referrals. It is therefore impossible to determine whether they constitute the sort of "sustained" business activities required by ORS 14.080(2).

Finally, plaintiffs contend that defendants "cultivate[] relationships with Multnomah County clinics, sending Christmas gifts and on occasion providing lunches." What the record reveals, however, is that Oregon Orthopedic sends Christmas chocolates to two clinics, and provided a single lunch in 2009. Even assuming for the sake of argument that those are the sort of "regular *** business activities" that ORS 14.080(2) refers to, the fact remains that they are not in any sense "sustained."

In short, none of the activities on which plaintiffs rely satisfies the statutory requirement of "regular, sustained business activities" within the meaning of ORS 14.080(2). Nor, when taken collectively, do they establish defendants' residence in Multnomah County for venue purposes. The trial court therefore erred in denying defendants' motion to change venue.

Peremptory writ of mandamus to issue ordering trial court to grant defendants' motion to change venue.