Argued and submitted March 30, conviction for criminal mistreatment in the first degree reversed; remanded for resentencing; otherwise affirmed August 3, 2011

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JOHN WILLIAM NOLEN,
*Defendant-Appellant.*

Washington County Circuit Court
C090410CR; A142244

260 P3d 810

Susan F. Drake, Senior Deputy Public Defender, argued the cause for appellant. With her on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Pamela J. Walsh, Assistant Attorney General, argued the cause for respondent. With her on the brief were John R. Kroger, Attorney General, and Mary H. Williams, Solicitor General.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Nakamoto, Judge.

NAKAMOTO, J.

## NAKAMOTO, J.

A jury convicted defendant of criminal mistreatment in the first degree, ORS 163.205, and felony assault in the fourth degree, ORS 163.160(3), as the result of an altercation with his mother. On appeal, he challenges only the conviction for criminal mistreatment, arguing, among other things, that there is insufficient evidence to sustain it. We agree and therefore reverse that conviction.

We state the facts most favorably to the state, both because of the verdict in its favor and because of the issues that defendant raises on appeal. *State v. Hall*, 327 Or 568, 570, 966 P2d 208 (1998). At the time of the incident that led to these convictions, defendant's mother, Lorena Nolen (Nolen), was in her early 70s. She has a number of health problems, including long-standing diabetes, arthritis, and severely limited vision, as a result of which she cannot live by herself without substantial assistance. Beginning in August 2007, she lived in an assisted care facility in California. Defendant, who had lost his job in 2006 and was seeking permanent employment, moved in with her in the late summer of 2008. In October of that year, they moved to Hillsboro so defendant could be near his children, who live in Washington, and work on getting his high school teaching certificate.

On the trip north, Nolen and defendant talked about their living arrangement. They agreed that defendant would continue to help Nolen with her medical needs and that she would continue paying his bills and doing the cooking and laundry. Defendant also took Nolen on short walks and once drove to the coast with her. He usually did the grocery shopping because Nolen's poor eyesight and difficulty walking made the process go much slower when she was involved. Nolen wanted to do as much as she was able to do in exchange for what defendant was doing for her.

After Nolen and defendant arrived in Hillsboro, defendant spent most of his time in his room on the computer, looking for jobs and tutoring in math. He also prepared to take courses that would help him earn his teaching certificate. If defendant were to find a job, Nolen expected him to work full time rather than to stay at home with her.

In January 2009, defendant's children came for a visit. During the visit, Nolen learned that the children expected to go out for lunch and then go to a movie. She objected, stating that she was already paying for their support and that she could not afford to pay for entertainment as well. That statement led to a verbal conflict with defendant that escalated into a physical confrontation during which defendant caused physical harm to Nolen. Defendant and the children then left, and Nolen had the apartment manager change the locks on her apartment. Since that occurrence, defendant and Nolen have lived separately.

Defendant was charged with criminal mistreatment and felony assault as a result of the incident. At the close of the state's case, defendant moved for a judgment of acquittal on the criminal mistreatment charge. On appeal, he assigns error to the denial of that motion and also to the jury instruction that the trial court gave that related to that charge. He makes no assignments of error concerning the assault charge. Because it is decisive, we consider only the assignment of error related to the motion for a judgment of acquittal. We begin with the elements of the crime that the state had to prove.

The relevant portions of ORS 163.205 provide:

"(1)  A person commits the crime of criminal mistreatment in the first degree if:

"* * * * *

"(b)  The person, in violation of a legal duty to provide care for a dependent person or an elderly person, * * * intentionally or knowingly:

"(A)  Causes physical injury or injuries to the dependent person or elderly person.

"* * * * *

"(2)  As used in this section:

"* * * * *

"(c)  'Elderly person' means a person 65 years of age or older.

> "(d) 'Legal duty' includes but is not limited to a duty created by familial relationship, court order, contractual agreement or statutory or case law."

There is no dispute that Nolen is an elderly person. And, the evidence permitted the jury to find that defendant intentionally or knowingly caused physical injury to her. The issue on appeal, thus, is whether the evidence also permitted the jury to find that defendant had a legal duty to provide care for Nolen.

The statute defining the crime of criminal mistreatment lists several specific sources of a legal duty to provide care and states that the list is not exclusive. ORS 163.205(2)(d). At trial, however, the state relied on a contractual agreement as the basis for the duty that defendant allegedly violated, and it continues to take that position on appeal. The parties' arguments are directed to that issue, and we therefore construe the phrase "contractual agreement" in ORS 163.205(2)(d).

Defendant argues that a "contractual agreement" under ORS 163.205(2)(d) must be an agreement that constitutes a legally binding contract. The state, on the other hand, argues that any agreement between competent parties, supported by consideration in the form of mutual promises and performance, will suffice. We agree with defendant.[1]

The phrase "contractual agreement" itself distinguishes between agreements in general and a subset of agreements that are contractual. Under the statute, only those agreements that are contractual will create a legal duty of care. No statutory source defines the phrase "contractual agreement" any further, but we conclude both from the words used and from uses of the phrase in other Oregon legal sources that the legislature intended a "contractual agreement" to mean an agreement that constitutes a legally binding contract.

---

[1] The parties provide little support for their opposing proposed interpretations of "contractual agreement" in the statute. We are nevertheless "responsible for identifying the correct interpretation, whether or not asserted by the parties." *Stull v. Hoke*, 326 Or 72, 77, 948 P2d 722 (1997).

That understanding is consistent with the uniform use of the phrase "contractual agreement" in Oregon statutes and case law to refer exclusively to enforceable contracts. *See, e.g.*, ORS 98.308(2), (3) (limiting banks' authority to impose charges on dormant accounts without written "contractual agreement"; signature card by itself does not constitute "contractual agreement"); ORS 308.709(4)(c) (government restriction on use of multiunit rental housing that would permit special property tax assessment could be established by, among other things, a "contractual agreement or other legally binding" restriction on use); ORS 341.425 (unaccredited community college must have contract with accredited institution; state board of education must review the "contractual agreement" between them); *Klamath Irrigation District v. United States*, 348 Or 15, 21, 227 P3d 1145 (2010) ("contractual agreements" between farmers and federal government concerning irrigation water); *Coca Cola Co. v. Dept. of Rev.*, 271 Or 517, 519, 533 P2d 788 (1975) ("contractual agreement" between parent and subsidiary concerning subsidiary's use of soft drink syrups in substantial competition with parent's); *Employers Mut. Liability v. Bluhm*, 227 Or 415, 417, 362 P2d 755 (1961) (if husband's release of claims arising from accident was valid, he breached it by suing for injuries; wife, not inhibited by any "contractual agreement," also sued for loss of services). We find nothing in either the terms of the phrase itself or in other sources of law that would suggest that the "contractual agreement" to which ORS 163.205(2)(d) refers is anything other than a legally binding contract.

The next question, then, is whether there is evidence that defendant and Nolen entered into a legally binding contract for him to provide care for her. In considering that issue, we must pay particular attention to the family relationship between them. For well over a century, Oregon courts have held that agreements among family members concerning care and support are presumably gratuitous—that is, that they do not have contractual force.

> "The rule in such cases is that furnishing support and maintenance to a near relative will be presumed to have been done gratuitously, however valuable it may have been,

and that such presumption can only be overcome by showing that payment therefor was intended and expected to be made in some manner."

*Wilkes v. Cornelius*, 21 Or 341, 347, 23 P 473 (1890). The Supreme Court explained the reason for the rule in *York v. Place*, 273 Or 947, 949-50, 544 P2d 572 (1975), in which it applied the rule to unmarried persons living together in a domestic relationship like that of spouses:

> "The basis of this principle is that in the normal course of human affairs persons living together in a close relationship perform services for each other without expectation of payment. Payment in the usual sense is not expected because the parties mutually care for each other's needs. Also because services are performed out of a feeling of affection or a sense of obligation, not for payment."

These cases provide an example of a kind of agreement between family members to perform services for one another that is not necessarily contractual. The rule recognizes that reasons other than an exchange of value may motivate people to provide services for others, and, in the family relationship, the presumption is that those noncontractual reasons are likely to predominate. Indeed, the inclusion of the term "familial relationship" as another source of legal duty in ORS 163.205(2)(d) suggests that the legislature recognized that an agreement by one family member to care for another would not necessarily constitute a "contractual agreement."

As in *Wilkes* and *York*, the issue of compensation for services among family members most commonly arises in claims against estates by long-term caregivers who are disappointed with the care recipient's testamentary dispositions. It can, however, arise in other contexts. For example, in *Ibach v. Hoffman*, 184 Or 296, 198 P2d 266 (1948), a mother filed an action against her daughter and son-in-law to recover money that they allegedly held in trust for the mother. The daughter and son-in-law responded by unsuccessfully asserting a claim to the money for services that they had rendered to the mother. The Supreme Court applied the presumption of *Wilkes* and ruled for the mother. The rule is a principle of Oregon contract law, not one limited to claims against

estates. *See Fernandez v. Zullo*, 263 Or 13, 17, 500 P2d 705 (1972) (presumption applied in action by creditor to an alleged fraudulent conveyance of land by debtor father to his daughter for services she had provided father).

The rule of *Wilkes* therefore applies directly to whether defendant had a contractual obligation under ORS 163.205(2)(d) to provide care to Nolen, and we examine the evidence in that light. We conclude that the most that the evidence shows is that Nolen and defendant agreed to divide the costs and responsibilities of living together as mother and son as a consequence of Nolen's need for substantial continuing assistance and her greater immediate financial resources. There is no suggestion in the evidence of a bargained-for exchange of obligations or payment for services. Rather, the evidence shows a familial arrangement in which Nolen and defendant mutually cared for each other's needs. Based on that evidence, a jury could not find beyond a reasonable doubt that any agreement between defendant and Nolen was a contractual agreement. Thus, as this case was presented at trial, a reasonable juror could not find that defendant had a legal duty to provide care to Nolen within the meaning of ORS 163.205(2)(d). Because the state failed to prove an element of the crime, the trial court erred in denying defendant's motion for a judgment of acquittal on the criminal mistreatment charge.

Conviction for criminal mistreatment in the first degree reversed; remanded for resentencing; otherwise affirmed.