DEHOOG, P. J.
*718 Defendant appeals a judgment convicting him of first-degree criminal mistreatment, ORS 163.205, and fourth-degree assault, ORS 163.160. We write only to address defendant's first assignment of error, in which he argues that the trial court erroneously instructed the jury regarding an element of first-degree criminal mistreatment. Specifically, for purposes of the state's need to prove that the victim was a "dependent person," ORS 163.205(1)(b), the court instructed the jury that "[a] minor child under the age of 18 is a dependent person." We agree that the court's instruction misstated the law and that the error was not harmless. We therefore reverse and remand defendant's conviction for first-degree criminal mistreatment, remand for resentencing, and otherwise affirm.[1]
The facts necessary to resolve this appeal are largely procedural and undisputed. Defendant's charges involved his 16-year-old daughter, K. At the time of the incident, K lived with defendant at defendant's mother's house and received state assistance in the form of food stamps and free school lunches; her coaches and grandfather also gave her food. Defendant was charged with committing three offenses against K, including first-degree criminal mistreatment.
As charged in this case, a person commits criminal mistreatment in the first degree if
"[t]he person, in violation of a legal duty to provide care for a dependent person or elderly person, or having assumed the permanent or temporary care, custody or responsibility for the supervision of a dependent person or elderly person, intentionally or knowingly:
"(A) Causes physical injury or injuries to the dependent person or elderly person[.]"
ORS 163.205(1)(b).[2] The statute defines "dependent person" as follows:
*719 " 'Dependent person' means a person who because of either age or a physical or mental disability is dependent upon another to provide for the person's physical needs."
ORS 163.205(2)(b).
Although the uniform jury instruction, UCrJI 1700, tracks that statutory definition, the state requested a special jury instruction adding the language that "a child under the age of 18 is a dependent person." The state argued that any unemancipated minor necessarily qualified as a "dependent person" "because *1013 of *** age." After first "grudgingly agree[ing]" with the state's proposed definition, defendant later took exception to the instruction, arguing that an "accurate statement of the law" would be "that a child under 18 may be a dependent person." (Emphasis added.) Defendant also argued that the state's instruction would "effectively satisf[y] an element of the crime by a statement of the court," thus "relieving the state of [the] burden of proof for that element."
The trial court gave the state's proposed instruction. The court acknowledged that it could "imagine situations where a child under the age of 18 is not dependent on their parent legally," but explained that there were "no facts supporting *** one of those situations here in court, so I think it's appropriate to give that instruction to the jury as a matter of law." The instruction that the court gave drew from the statutory definition of "dependent person" in ORS 163.205(2)(b), together with the state's special instruction, as follows:
"A dependent person is a person who, because of age, is dependent on another to provide for the person's physical needs. A minor child under the age of 18 is a dependent person ."
(Emphasis added.) The jury found defendant guilty of first-degree criminal mistreatment and fourth-degree assault and acquitted him on a charge of strangulation, ORS 163.187.
On appeal, defendant argues that the instruction misstated the law and allowed the jury to convict him of criminal mistreatment without itself finding that K was a "dependent person" as defined in ORS 163.205. He reasons *720 that, if the legislature had intended "dependent person" to include all minors, it would have used "minor" or "person under 18 years of age," rather than "a person who because of *** age *** is dependent upon another to provide for the person's physical needs." ORS 163.205(2)(b). Defendant argues that many minors do not meet that definition, including, he posits, a 16- or 17-year old who is able, both legally and practically, to drive, earn money, live independently, "and generally be entirely responsible for his or her own physical needs." The state rejects that distinction and contends that most minors are "dependent" as a matter of law, because minors "suffer[ ] from certain legal incapacities that render [them] unable to provide for [their] needs." The state acknowledges that it might be necessary to "refine" its proposed instruction for married persons or legally emancipated minors; the state argues, however, that there was no evidence here that K was either of those things.
"In determining whether it was error to give a particular jury instruction, [we] review[ ] the instructions as a whole to determine whether they accurately state the law." State v. Serrano , 355 Or. 172, 187, 324 P.3d 1274 (2014), cert. den. , --- U.S. ----, 135 S. Ct. 2861, 192 L.Ed.2d 899 (2015). The meaning of "dependent person" in ORS 163.205 -specifically, whether all minors are presumptively "dependent"-is a question of law that requires us to discern the legislature's intended meaning by examining the statute's text, context, and pertinent legislative history. State v. Gaines , 346 Or. 160, 171-72, 206 P.3d 1042 (2009).
As noted, the text of ORS 163.205(2)(b) provides:
" 'Dependent person' means a person who because of either age or a physical or mental disability is dependent upon another to provide for the person's physical needs."
We begin with the type of dependence at issue, which is "to provide for the person's physical needs." The statute does not define "provide" or "needs." When the legislature has not defined statutory terms, "we look to the dictionary to determine their ordinary meaning." State v. Baker-Krofft , 348 Or. 655, 661, 239 P.3d 226 (2010). As used here, "provide" may be defined as "to supply what is needed for sustenance or support." Webster's Third New Int'l Dictionary 1827 (unabridged *721 ed. 2002). Next, "needs," as in "physical needs," refers to a person's material, bodily requirements: "a want of something requisite, desirable, or useful[;] *** a physiological *** requirement for the maintenance of the homeostasis of an organism." Webster's at 1512 (defining "need"). Turning to "dependent upon another," the relevant definitions of dependent are "unable to exist, *1014 sustain oneself, or act suitably *** without the assistance or direction of another," and "lacking the necessary means of support and receiving aid from others." Webster's at 604.[3] Finally, the person's dependence must be "because of either age or a physical or mental disability," which would exclude, for example, a healthy adult who chooses to remain dependent on others.
The bare text of the statute gives rise to several ambiguities. First, to "provide for the person's physical needs" could refer to supplying the goods and services necessary for a person's physical well-being; alternatively, it could refer to physically assisting a person with meeting those needs, such as by feeding or clothing the person. Second, "dependent" could refer to a person who actually relies upon another to provide for his or her physical needs or, instead, to a person who is incapable of providing for his or her own needs. And third, the phrase "because of * * * age," as applied to a minor, could incorporate any combination of the physical, legal, or practical obstacles that would prevent a young person from providing for the person's own physical needs.
We turn next to statutory context, which includes the changes over time to the statute at issue. See Kohring v. Ballard , 355 Or. 297, 307-08, 325 P.3d 717 (2014). In examining those changes, we also recount the related legislative history, bearing in mind that statutory text and context "must be given primary weight in the analysis." Gaines , 346 Or. at 171, 206 P.3d 1042.
As originally enacted, ORS 163.205 prohibited only what is now found in paragraph (1)(a): "withhold[ing] necessary *722 and adequate food, physical care or medical attention." Or. Laws 1973, ch. 627, § 3. The statute was meant to address "nursing home abuse and to protect the residents of those facilities." Baker-Krofft , 348 Or. at 664, 239 P.3d 226 (citing Minutes, Special Committee on Aging, Apr. 9, 1973, at 1). Legislators were aware, however, that the wording of the bill applied to more than just the elderly; Senator Carson explained on the Senate floor that the committee had heard testimony about "some of the practices in some of the homes for the aged, or, in fact, where any citizen of Oregon may be housed." Id. at 665, 239 P.3d 226 (quoting Tape Recording, Senate Floor, SB 780, June 29, 1973, Tape 32, Side 1 (statement of Senator Wallace P. Carson) ).
In 1981, the legislature added the prohibition at issue in the present case: causing "physical injury or injuries to the dependent person." Or. Laws 1981, ch. 486, § 1. According to both the bill's sponsor, Representative Springer, and the member of the Oregon District Attorneys Association (ODAA) who helped draft the bill, John Bradley, the amendment's purpose was to "enhance protection by the criminal justice system of people who by reason of either age and/or physical or mental handicap are dependent on others and therefore more vulnerable to physical abuse and less capable of reporting it." Exhibit A, Senate Committee on Justice, HB 3058, June 23, 1981 (accompanying statement of Rep Dick Springer); Exhibit A, House Committee on Judiciary, Subcommittee 3, HB 3058, May 1, 1981 (accompanying statement of John Bradley). The bill therefore elevated physical abuse of a dependent person to a felony, including circumstances in which the underlying conduct would previously have supported only a charge of misdemeanor fourth-degree assault, ORS 163.160.
Specifically discussing the meaning of "dependent person," Representative Springer explained that a dependent person "may often be an elderly person, but we're also thinking of children, thinking of those who, because of some physical [or] mental disability, are truly dependent upon another person or institution for their well-being and their care." Tape Recording, Senate Committee on Justice, HB 3058, June 23, 1981, Tape 241, Side A (statement of Rep Dick Springer). In their prepared exhibits, cited above, the *723 bill's proponents used as examples a "baby," a "mentally handicapped child," a *1015 "two-year old child," and patients in a nursing home; committee hearings also included discussion of abuse in a state mental hospital. Id. Another representative, who spoke both in committee and on the House floor, discussed a hypothetical 10- or 12-year-old victim. Tape Recording, House Floor, HB 3058, June 8, 1981, Tape 17, Side II (statement of Rep Drew Davis); Tape Recording, Senate Committee on Justice, HB 3058, June 23, 1981, Tape 242, Side A (statement of Rep Drew Davis). And Bradley explained in response to a legislator's question that the definition would "probably not" apply to a spouse who was only "economically dependent," but that the bill would apply if the spouse was "physically dependent, for instance if one of the spouses couldn't get out of bed, [or] was handicapped or paralyzed." Tape Recording, House Committee on Judiciary, Subcommittee 3, HB 3058, May 18, 1981, Tape 390, Side B (statement of John Bradley).
That history addresses some, but not all, of the statute's ambiguity. Both the 1973 and 1981 legislatures appear to have been concerned with protecting those people who are vulnerable because they rely upon another person for their care, whether due to an institutional setting, youth, old age, or disability. Given the legislature's continued focus on those concerns, we understand the 1981 legislature to have intended to protect those people who must depend upon another person to meet the types of needs first addressed in 1973: "necessary and adequate food, physical care or medical attention." ORS 163.205(1)(a). A "dependent person," therefore, must be someone who is incapable of attending to those needs, either because they cannot obtain what is necessary to meet those needs or because they are physically or mentally unable to care for those needs. Such a person is "dependent upon another to provide for the person's physical needs," ORS 163.205(2)(b), regardless of whether another person actually is providing for those needs.
That interpretation of ORS 163.205(2)(b) is supported by the Supreme Court's construction of the closely related language in ORS 163.205(1)(a) in Baker-Krofft , 348 Or. at 666-67, 239 P.3d 226. There, the court concluded that "withhold[ing] necessary and adequate food, physical care or medical *724 attention" does not include the failure to address safety hazards present in the home. Notably in Baker-Krofft , both the court and the parties repeatedly used the term "dependent person," even though, under paragraph (1)(a), the victim need not be dependent. (Emphasis added.) Echoing the language of paragraph (1)(b), the court held that, for purposes of paragraph (1)(a), a person "withholds necessary and adequate physical care from a dependent person when the person keeps back from the dependent person those physical services and attention that are necessary to provide for the dependent person's bodily needs ." Baker-Krofft , 348 Or. at 666-67, 239 P.3d 226 (emphasis added). Those services, the court explained, might include "periodically turning a bedridden person who is unable to move on her own so that she does not develop bed sores or maintaining a child or elderly person's personal hygiene so that the person does not develop infections or some other illness." Id. at 667 n. 5, 239 P.3d 226. The court's use of "dependent person" in discussing ORS 163.205(1)(a) demonstrates the contextual link between that paragraph and paragraph (1)(b)-although (1)(a) protects a larger class of persons, the focus of both paragraphs is a person who is especially vulnerable due to his or her reliance upon another to provide for the person's physical needs.
With that understanding of "dependent" in mind-that is, incapable of meeting one's own physical needs-we turn to what it means for a person to be dependent "because of *** age." ORS 163.205(2)(b). As noted, the state contends rather categorically that a person is presumptively dependent "because of age" if the person is under the age of 18. Purporting to rely on the statutory text, the state reasons that, because persons under the age of 18 typically suffer various legal disabilities, they are necessarily dependent on others to meet their physical needs; i.e. , they are dependent persons as a matter of law. We disagree.
Beginning again with the statutory text, we recognize that "age" can, in certain contexts, refer to the societal and legal restrictions *1016 that are incidents of youth. See Webster's at 40 (defining "age" as "the time of life at which one becomes naturally or conventionally qualified or disqualified for something," as in "of age"). We nonetheless reject the *725 state's categorical reading of ORS 163.205(2)(b). That is, not every person under the age of 18 is presumptively incapable of meeting his or her physical needs without relying upon another person. For one thing, the state's concession that the statute does not apply to emancipated minors undercuts its assertion that "dependent because of age" is effectively synonymous with "under the age of 18." See ORS 419B.550 - 419B.558 (setting out process for emancipation). For another thing, not all unmarried persons under the age of 18 and not all unemancipated minors are unable to meet their physical needs, regardless of the legal limitations they may face; indeed, some work to support themselves and their families. Although that fact alone does not dictate the conclusion that "dependent because of age" means something different than "under the age of 18," it casts additional doubt on the state's contention that, under ORS 163.205, a state of dependence "because of age" is necessarily coextensive with minority.
A broader look at context and legislative history confirms our understanding that "because of * * * age" means something other than "because of minority." The use of "age" alongside "physical or mental disability" suggests that the legislature intended "because of * * * age" to refer to the impairments that may attend either youth or old age and are akin to physical or mental disabilities, such as physical weaknesses or developing or diminishing cognitive skills. That aligns with our understanding of "dependent upon another to provide for the person's physical needs," which hinges on the person's capacity to meet and attend to those needs, rather than on whether another person is in fact providing for those needs. And, returning to the 1981 legislative history, we note that the discussion there focused on young children-at most age 12-and people receiving care in an institutional setting: people who are "truly dependent upon another * * * for their well-being and their care" and are therefore "vulnerable to physical abuse and less capable of reporting it." 293 Or. App. at 722, 429 P.3d at 1014; see also State v. Fitzhugh , 260 Or. App. 401, 412, 317 P.3d 371 (2013), rev. den. , 355 Or. 317, 327 P.3d 1167 (2014) (holding that a "physical * * * disability" under ORS 163.205(2)(b) is not limited to permanent or long-term impairment; "what matters is the severity of the disability and its effect on the victim").
*726 Finally, we find strong support for our interpretation of "dependent person" and "because of * * * age" in two related criminal statutes: murder by abuse, ORS 163.115 (1)(c), and child abandonment, ORS 163.535. We recognize that our analysis of those statutes requires us to consider laws that were enacted well after the legislature enacted the definition of "dependent person," which has remained unchanged since 1981, and that we typically do not consider subsequent enactments in determining the meaning of an existing statute. That rule, however, is not absolute. "Later amendments that materially change the text or context of an earlier statute can change the meaning of the earlier statute when the changed meaning is either 'expressly declared or necessarily implied.' " Dept. of Human Services v. S. M. , 355 Or. 241, 250, 323 P.3d 947 (2014) (quoting State v. Ofodrinwa , 353 Or. 507, 529-30, 300 P.3d 154 (2013) ). And, even when there is no evidence that the legislature intended to alter the meaning of an existing statute, subsequent enactments may be helpful as context " 'for the purposes of demonstrating consistency (or inconsistency) in word usage over time as indirect evidence' of the legislature's original intent." Daniel N. Gordon, PC v. Rosenblum , 361 Or. 352, 365 n. 4, 393 P.3d 1122 (2017) (quoting Halperin v. Pitts , 352 Or. 482, 490, 287 P.3d 1069 (2012) ).
Turning to the first of those statutes, we note that, in 1989, the legislature amended ORS 163.115, the statute defining murder, to include "when a person, recklessly under circumstances manifesting extreme indifference to the value of human life, causes the death of a child under 14 years of age or a dependent person , as defined in ORS 163.205," and the person has previously assaulted or tortured "the victim or another child under 14 *1017 years of age or a dependent person." Or. Laws 1989, ch. 985, § 1 (emphasis added).
The legislature would not have made the statute applicable both to a "child under 14 years of age" and a "dependent person" if it had understood all minors to be "dependent persons." Moreover, the legislative history shows that the legislature carefully chose the specific age of 14 after considering a number of different options. As introduced, the language later codified at ORS 163.115(1) (c)
*727 would have applied to "a child under 16 years of age, a developmentally disabled person or a dependent adult," which was further defined as "a person who because of either extreme advanced age or a physical or mental disability is dependent upon another person to provide the basic necessities of life." HB 2033 (1989). In committee, however, legislators and witnesses discussed amending the bill to apply to a range of ages between 12 and 18, ultimately settling on 14, and separately adopting the definition of "dependent person" from ORS 163.205. See, e.g. , Tape Recording, House Committee on Judiciary, Subcommittee on Family Justice, HB 2033, Jan. 20, 1989, Tape 6, Side A; Tape Recording, House Committee on Judiciary, Subcommittee on Family Justice, HB 2033, Feb. 7, 1989, Tape 20, Side A; Tape Recording, Conference Committee on HB 2033, July 3, 1989, Tape 3, Side A.
The second enactment implicating ORS 163.205 came in 1993, when the legislature addressed concerns of elder abuse by amending the statute to make it applicable to a dependent person or to an "elderly person," defined as "a person 65 years of age or older." Or. Laws 1993, ch. 364, § 2.[4] During committee hearings on the 1993 bill, certain representatives questioned the necessity of extending criminal mistreatment to protect elderly people who would not otherwise meet the definition of "dependent person." In the opinion of committee counsel, the current definition applied only to the "class of people who are fully dependent, who need somebody to bathe them, clothe them, etc." Tape Recording, House Committee on Judiciary, HB 2318, Apr. 12, 1993, Tape 22, Side A (statement of Holly Robinson). By contrast, "semi-independent" individuals-those with "part-time caretakers" who receive "limited help"-would not, in Robinson's opinion, meet the "dependent person" definition. Id.
Nothing in the 1989 and 1993 acts supports the state's argument that the legislature intended for "dependent *728 person" to presumptively include all minors. First, no legislator or witness appears to have taken an expansive view of the meaning of "dependent person." The history of those acts instead indicates that the legislature understood that many people, both old and young, would not meet that definition even if they relied, in part, on others to provide for their care. That is, it would have been unnecessary to add "elderly person" to ORS 163.205 if the legislature had believed that vulnerable "semi-independent" seniors were already protected under the statute. Similarly, it would have been unnecessary to include both people "under 14 years of age" and "dependent person" in the murder-by-abuse statute if the legislature had believed that all persons under age 14 are dependent because of age.
Significantly, interpreting "dependent person" as it appears in ORS 163.205 to presumptively include all minors would conflict with the explicitly age-based distinctions that the legislature purposely made in the murder-by-abuse and child-abandonment statutes. The murder-by-abuse statute, ORS 163.115(1)(c), manifests clear legislative intent that it apply without exception to children under the age of 14, but to other children only if they are "dependent person[s]." Similarly, following the 1993 amendments, ORS 163.205(1)(b)(B) is materially indistinguishable from the child abandonment statute, ORS 163.535, with the sole difference being that child abandonment applies only when the victim is "a child under 15 years of age." In all other respects, both statutes apply under the same circumstances and impose *1018 the same penalties.[5] The legislature has chosen not to criminalize abandonment of a minor over the age of 14; construing the criminal mistreatment statute to categorically apply to all minors would judicially undo that legislative choice.[6] *729 See ORS 161.025(1)(e) (among other considerations, criminal statutes should be interpreted "[t]o differentiate on reasonable grounds between serious and minor offenses").
Nor may we assume, as the state urges, that the legislature, by extending the protection of ORS 163.205 (1)(b) to all persons age 65 and older, intended for "because of *** age" to operate as a similar per se protection for all minors. That view contradicts the available legislative history and, even more significantly, would require us to impermissibly "insert what has been omitted" into the statute. ORS 174.010 (in the construction of a statute, we should not "insert what has been omitted" or "omit what has been inserted"). In any event, the state has not identified any statute in which the legislature has expressly equated "age" with "minority," much less with the specific age of under 18. In fact, the legislature's routine practice throughout the criminal code has been to use the term "minor" or to state the specific age ranges to which various statutes apply. See, e.g. , ORS 163.545 (second-degree child neglect applies where the child is "under 10 years of age"); ORS 163.435 (contributing to the sexual delinquency of a minor applies to sexual intercourse with a person "under 18 years of age"); ORS 163.575 (endangering the welfare of a minor applies where the child is "under 18 years of age").
Based on the foregoing examination of text, context, and legislative history, we conclude that "dependent upon another to provide for the person's physical needs" refers to a person's ability to attend to their own bodily needs such as food and hygiene. We further conclude that, for a young person to be dependent on another to provide for those needs "because of *** age," the person must be unable to provide for him or herself due to an age-related limitation that pre-vents the person from reliably meeting those needs without assistance. Those limitations certainly include the physical and intellectual immaturity of younger children, but may also include things such as the lack of judgment, experience, and emotional maturity that older children may exhibit.
*730 The focus, however, remains capacity rather than actual reliance; thus, a minor may cease to be dependent "because of *** age" while continuing, as a practical matter, to rely on another for support. Conversely, a jury would be free to find that a minor who provides for some of his or her own physical needs is a dependent person. Likewise, the degree to which age-related legal restrictions may impair a young person's ability to provide for those needs is a matter left to the jury.[7]
*1019 In light of the foregoing, we conclude that the trial court erred in instructing the jury that, as a matter of law, a "minor child under the age of 18" is "a dependent person." The court therefore erred by giving an instruction that did not accurately state the law.
We turn to whether the trial court's error was harmless, as the state contends. We must affirm defendant's conviction if we conclude that "there was little likelihood that the error affected the jury's verdict." State v. Davis , 336 Or. 19, 32, 77 P.3d 1111 (2003). That is, we will reverse only if the instructions "created an erroneous impression of the law that, if the jury had believed defendant's version of the facts, would have affected the outcome of the case." State v. Pine , 336 Or. 194, 210, 82 P.3d 130 (2003). In evaluating whether instructional error is harmless, "we have focused on whether there is an evidentiary basis from which the jury could find" that the element in question had not been met. State v. Waldbillig , 282 Or. App. 84, 93, 386 P.3d 51 (2016), rev. den. , 361 Or. 350, 393 P.3d 1179 (2017) ; see Purdy v. Deere and Company , 355 Or. 204, 232, 324 P.3d 455 (2014) (instructional error should be reviewed "in light of the evidence and the parties' theories of the case at trial"). In conducting that assessment, we must *731 avoid reweighing the evidence ourselves in the course of reviewing the record. "[Harmlessness] is not a finding about how the court views the weight of the evidence of the defendant's guilt. It is a legal conclusion about the likely effect of the error on the verdict." Davis , 336 Or. at 32, 77 P.3d 1111.
Here the instruction gave the jury the erroneous impression that K was necessarily a "dependent person" because she was under the age of 18. As a result, the jurors were never asked to find beyond a reasonable doubt whether the 16-year-old alleged victim was "dependent upon another to provide for [her] physical needs." Cf. State v. Davis , 265 Or. App. 179, 193, 335 P.3d 1266 (2014) ("Using the doctrine of issue preclusion to conclusively establish facts necessary for a conviction *** violates the defendant's constitutional right to a jury trial because it seriously hobble[s] the jury in its quest for truth by removing significant facts from the deliberative process." (Internal quotation marks omitted.) ). Instead, the prosecutor relied on the erroneous instruction during closing argument, stating that "everybody knows a child is a dependent person" and that the victim of criminal mistreatment "has to be under the age of 18 or maybe 65 or suffering from some disability that requires somebody else to provide their care."
The limited evidence regarding K's circumstances is inconclusive regarding her ability to care for her own physical needs. The state did not develop its case regarding that point, most likely because, given the trial court's agreement to give the state's requested jury instruction, it did not have to. As a result, on this record, we cannot conclude that there is little likelihood that the erroneous instruction affected the outcome.
Conviction for first-degree criminal mistreatment reversed and remanded; remanded for resentencing; otherwise affirmed.

We reject claimant's second, third, and fourth assignments of error without written discussion. Because our disposition will require the court to resentence defendant, we do not reach claimant's fifth assignment of error concerning a condition of probation.

We cite to the current version of ORS 163.205, the quoted sections of which have not changed since the time of defendant's alleged offense.

We recognize that, under ORS 163.205(2)(b), the term "dependent" is defined, at least insofar as it appears in the phrase "dependent person." However, because the word "dependent" appears somewhat circularly both in the phrase we seek to construe and in the phrase that purports to define it, we look beyond that statutory definition for clues as to its intended meaning.

The 1993 amendment also added a number of methods of committing criminal mistreatment under paragraph (1)(b). In addition to causing physical injury or injuries to the dependent or elderly person, ORS 163.205(1)(b)(A), the legislature added subparagraphs (B) and (C), which parallel the child abandonment and neglect statutes, see ORS 163.535 (abandonment), ORS 163.545 (neglect), and subparagraphs (D) and (E), concerning financial abuse and fraud.

Both child abandonment, ORS 163.535, and criminal mistreatment by abandonment, ORS 163.205(1)(b)(B), are Class C felonies that criminalize deserting the victim with the "intent to abandon." Both apply only to persons with a duty to care for the victim: "a parent, lawful guardian or other person lawfully charged with the care or custody of a child under 15 years of age," ORS 163.535(1), or a person with a "legal duty to provide care for a dependent person or elderly person, or [who has] assumed the permanent or temporary care, custody or responsibility for the supervision of a dependent person or elderly person," ORS 163.205(1)(b).

Our interpretation of "dependent person" in no way precludes prosecution for either murder by abuse or criminal mistreatment by abandonment when the victim is an older minor. It merely requires the state to prove that the victim was a dependent person. See State v. McAnulty , 356 Or. 432, 485, 338 P.3d 653 (2014), cert. den. , --- U.S. ----, 136 S. Ct. 34, 193 L.Ed.2d 48 (2015) (rejecting the defendant's argument that murder by abuse is categorically inapplicable to a 15-year-old victim).

We note that, by age 16, many of those restrictions are lifted or significantly relaxed. As we have observed in a different context:
"Our community deems [16- and 17-year-old minors], unemancipated or not, to be sufficiently mature and responsible to, among other activities: drive an automobile on their own; possess a rifle, shotgun, or pistol; contract for a dwelling unit and utilities without a parent's consent; work 10 hours or more a day, and six days or more a week; and be prosecuted and sentenced as an adult for certain criminal offenses."
Farmers Ins. Co. v. Jeske , 157 Or. App. 362, 369 n. 4, 971 P.2d 422 (1998) (citations omitted).