DeVORE, J.
*58 *671 The statute on first-degree criminal mistreatment, ORS 163.205(1)(b), sanctions a defendant who unlawfully takes or appropriates money or property from an elderly or dependent person if the defendant had a "legal duty to provide care" for the elderly or dependent person. After judgment of conviction on a number of offenses, defendant appeals the judgment regarding the three counts of first-degree criminal mistreatment. She assigns error to the trial court's denial of her motion for a judgment of acquittal, arguing that, for purposes of ORS 163.205(1)(b), she did not have a "legal duty to provide care" for her father when he authorized her to act pursuant to a power of attorney, regardless whether she unlawfully took or appropriated his money or property using that authority. Defendant contends that the "legal duty to provide care" under ORS 163.205 (1)(b) is limited to providing physical care. We disagree and, accordingly, affirm.
When denial of a defendant's motion for a judgment of acquittal "centers on the meaning of the statute defining the offense," we review the interpretation of the statute for legal error. State v. Hunt , 270 Or. App. 206, 210, 346 P.3d 1285 (2015) (internal quotation marks and citation omitted). In determining the sufficiency of the evidence, we review the facts in the light most favorable to the state to determine whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. State v. Cunningham , 320 Or. 47, 63, 880 P.2d 431 (1994), cert. den. , 514 U.S. 1005, 115 S.Ct. 1317, 131 L.Ed.2d 198 (1995).
We provide a brief summary of the events giving rise to the issue on appeal, because the appeal reduces to a question of statutory interpretation. Defendant's father, the victim in this case, was taken to OHSU as a result of various health complications requiring surgeries. After the surgeries, he spent the next seven months in a nursing home and rehabilitation facility. Altogether, he was bedridden and unable to care for himself for about 10 months.
While the victim was physically incapacitated in hospital care, he signed a power of attorney over to defendant *672 authorizing her to manage his financial affairs.[1] He gave power of attorney to his daughter because he "trusted her" and because she is "family." He had a conversation with defendant, telling her that he was concerned about his finances and to "pay my bills and stuff, and make sure everything-basically make sure everything gets paid." He did not ask her to open any new bank accounts or obtain any credit cards in his name, and she never asked him permission to do so. He did not ask her to make any cash withdrawals for him either. Defendant, however, used the authority granted by the power of attorney to withdraw thousands of dollars from his bank account without his consent, to open multiple fraudulent credit-card accounts, and to trade in his car for another car with defendant's name on the title. The victim's credit score dropped from 780 to 520 while defendant was caring for his financial affairs.
Among other things, defendant was charged with three counts of criminal mistreatment in the first degree, ORS 163.205. To convict defendant of first-degree criminal mistreatment under ORS 163.205(1)(b)(D), the state had to prove that she (1) had a "legal duty to provide care" for an elderly person or dependent person or had assumed the care or supervision of the elderly or dependent person, and (2) intentionally or knowingly hid, took, or appropriated the elderly or dependent person's money or property for a use not in the due and lawful execution of defendant's responsibility. ORS 163.205(1)(b)(D) ; State v. Browning , 282 Or. App. 1, 3, 386 P.3d 192 (2016), rev. den. , 361 Or. 311, 393 P.3d 1170 (2017).
*59 At the close of the state's case, defendant moved for a judgment of acquittal on the counts of first-degree criminal mistreatment, arguing that the state failed to prove that defendant had a "legal duty to provide care" to the victim within the meaning of ORS 163.205(1)(b), because the victim was in the physical care of medical professionals and defendant was not providing care for his physical needs.
*673 Defendant contended, "To put it another way, [the victim] may have been a dependent person, but he was absolutely not dependent upon [defendant]" for his physical well-being. In defendant's view, the phrase "legal duty to provide care," as it is used in the first-degree criminal mistreatment statute, "does not mean a legal duty to provide financial care." The state countered that the phrase "legal duty to provide care" in ORS 163.205(1)(b) is not limited to persons providing "physical care" and includes the duty to provide financial care under a power of attorney. The trial court denied defendant's motion, concluding that "legal duty to provide care" includes a duty to serve as a faithful fiduciary when managing an elderly or dependent person's financial affairs pursuant to a power of attorney. The jury found defendant guilty on the criminal mistreatment counts, as well as other offenses.[2]
On appeal, defendant renews her arguments made to the trial court. Defendant contends that a power of attorney does not establish a "legal duty to provide care," as required by ORS 163.205(1)(b). Defendant concedes that she had a "legal duty" to act in accordance with the terms of the power of attorney, but she argues that the "legal duty" created by a power of attorney did not create a "legal duty to provide care" within the meaning of ORS 163.205(1)(b). In her view, the legislature intended to limit the reach of the statute to situations involving physical care. Defendant contends that text, context, and legislative history of ORS 163.205 support her position.
The state interprets the phrase more broadly. Also relying on the text, context, and legislative history of the statute, the state argues that violating a fiduciary duty created by a power of attorney violates a "legal duty to provide care." In the state's view, the legislature did not intend, after a series of amendments, to limit the "legal duty to provide care" to its original meaning once focused on physical caretaking.
*674 The issue raised by the parties is narrow. It is a question of statutory interpretation about what the legislature intended in ORS 163.205(1)(b) when it used the terms "legal duty to provide care."[3] Specifically, the question is whether a person acting for a dependent or elderly person as an attorney-in-fact under the authority of power of attorney has a "legal duty to provide care" or whether, as defendant posits, the legislature intended to limit the "legal duty to provide care" to persons providing physical care. In construing a statute, we consider its text, context, and legislative history to discern legislative intent. State v. Gaines , 346 Or. 160, 171-72, 206 P.3d 1042 (2009).
The text of ORS 163.205 provides, in part:
"(1) A person commits the crime of criminal mistreatment in the first degree if:
"(a) The person, in violation of a legal duty to provide care for another person, or having assumed the permanent or temporary care, custody or responsibility for the supervision of another person, intentionally or knowingly withholds necessary and adequate food, physical care or medical attention from that other person; or
"(b) The person, in violation of a legal duty to provide care for a dependent person or elderly person, or having assumed the permanent or temporary care, custody or responsibility for the supervision of a dependent person or elderly person, intentionally or knowingly:
*60 "* * * * *
"(D) Hides the dependent person's or elderly person's money or property or takes the money or property for, or appropriates the money or property to, any use or purpose not in the due and lawful execution of the person's responsibility[.]"
(Emphasis added.) The phrase "legal duty to provide care" in ORS 163.205(1)(b) is not defined by statute. However, ORS 163.205(2)(d) defines the term "legal duty." That statute states that the term " '[l]egal duty' includes but is not *675 limited to a duty created by familial relationship, court order, contractual agreement or statutory or case law." ORS 163.205(2)(d) ; State v. Nolen , 244 Or. App. 635, 639, 260 P.3d 810 (2011) (observing that ORS 163.205(2)(d) provides a nonexclusive list of several sources of a "legal duty" to provide care).
Defendant argues that the power of attorney in this case did not create a "legal duty" because "it did not establish a legally binding contract" between father and defendant. See Nolen , 244 Or. App. at 639-40, 260 P.3d 810 ("contractual agreement" under ORS 163.205(2)(d) must be an agreement that constitutes a "legally binding contract"). She argues that it is not a contract because she did not sign it.
Without deciding whether the power of attorney in this case constitutes a unilateral or bilateral contract within the meaning of ORS 163.205(2)(d), we recognize that a power of attorney is nonetheless a "legal duty" derived from "statutory or case law." A power of attorney is an "instrument granting someone authority to act as agent or attorney-in-fact for the grantor." Black's Law Dictionary 1360 (10th ed. 2014). The fiduciary duty created by a power of attorney is governed by ORS chapter 127. The text of ORS 127.045 states, "Unless otherwise provided in the power of attorney document, an agent must use the property of the principal for the benefit of the principal." It is sufficient here that the fiduciary relationship that exists between the grantor and agent with a power of attorney is a duty "derived from statutory or case law" and is therefore a "legal duty" under ORS 163.205(2)(d). Even so, that conclusion still leaves unresolved the specific issue whether that "legal duty" is a "legal duty to provide care " within the meaning of the statute.
The legislature has not defined the term "care." As a result, we may consider the dictionary as a reference to the term's ordinary meaning. See State v. Briney , 345 Or. 505, 511, 200 P.3d 550 (2008) (stating principle). To provide "care" means to "provide for or attend to needs or perform necessary personal services (as for a patient or a child)." Webster's Third New Int'l Dictionary 338 (unabridged ed. 2002); State v. Baker-Krofft , 348 Or. 655, 661, 239 P.3d 226 (2010) (interpreting the meaning of "care" in ORS 163.200 and *676 ORS 163.205 ).[4] Thus, based on the plain text of the statute, the phrase "legal duty to provide care" means that a person has a "legal duty" created by familial relationship, court order, contractual agreement or statutory, or case law to "provide for or attend to needs or perform necessary personal services." Such "needs" or "necessary personal services" can reasonably include more than just physical needs or services. Thus, the text of the phrase permits-and likely supports-the state's view that the phrase "legal duty to provide care" is not restricted to persons providing physical care.
Seen as a whole, the text of the statute supports that broader view. The first part of subsection (1) in the statute expresses the traditional, narrower view. That is, *61 ORS 163.205(1)(a) provides that a person commits first-degree criminal mistreatment, when, in violation of a legal duty to provide care, the person withholds food, physical care, or medical attention. The second part of subsection (1) expresses a broader view. That is, ORS 163.205(1)(b)(D) provides that a person commits first-degree criminal mistreatment, when, in violation of a legal duty to provide care, the person hides or takes money or property of a dependent or elderly person. That language strongly suggests that taking money or property is a "violation of a legal duty."
Nevertheless, defendant argues that the statutory context and legislative history of ORS 163.205 indicate a legislative intent to limit the "legal duty to provide care" to situations involving only physical care . Defendant contends that, when ORS 163.205 was originally enacted in 1973, it applied only to situations involving physical caretaking *677 duties. Defendant maintains that, despite the various amendments to the statute over the years to broaden the reach of the statute, the legislature intended to retain the original meaning of the phrase "legal duty to provide care." The state disagrees, relying on amendments to the statute in 1993, which, in the state's view, broadened the statute to include other "legal duties" besides physical caretaking duties. The state contends that the legislature's changes reflect a broader legislative desire to create criminal liability for people who assume a position of care and trust over elderly or dependent persons and then use that position to financially exploit them. We conclude that the state has the better argument.
As originally enacted in 1973, ORS 163.205 prohibited only what is now found in ORS 163.205(1)(a). The original version of the first-degree criminal mistreatment statute read:
(1) A person commits the crime of criminal mistreatment in the first degree if, in violation of a legal duty to provide care for another person, he intentionally withholds necessary and adequate food, physical care or medical attention from that person."
Or. Laws 1973, ch. 627, § 3; State v. Berry , 293 Or. App. 717, 721-30, 429 P.3d 1011 (2018) (recounting legislative history of ORS 163.205 ). In 1973, the statute was intended to address "nursing home abuse and to protect the residents of those facilities." Baker-Krofft , 348 Or. at 664, 239 P.3d 226 (citing Minutes, Special Committee on Aging, Apr. 9, 1973, 1).
The parties agree that, as originally enacted in 1973, the statute applied only to situations involving physical caretaking duties and was violated when a caretaker with a "legal duty to provide care for another person" withheld food, physical care, or medical attention from the person in his or her care. However, the parties dispute the effect of subsequent amendments to the statute.
In 1981, the legislature made the first set of amendments to the statute. The revised version of the statute read:
"(1) A person commits the crime of criminal mistreatment in the first degree if:
*678 "(a) The person violates a legal duty to provide care for another person by intentionally or knowingly withholding necessary and adequate food, physical care, or medical attention from that other person; or
"(b) The person, having assumed the permanent or temporary care, custody or responsibility for the supervision of a dependent person, intentionally or knowingly causes physical injury or injuries to the dependent person.
"(2) As used in this section, 'dependent person' means a person who because of either age or a physical or mental disability is dependent upon another to provide for the person's physical needs."
Or. Laws 1981, ch. 486, § 1. As relevant here, the amended statute did two things. First, it added the "knowing" culpable mental state. Second, it added a section protecting "dependent persons," which the legislature defined as people who are dependent upon another for physical needs. ORS 163.205(2) (1981). The 1981 legislature, like the 1973 legislature, was concerned with protecting those who rely on another person for their physical care.
*62 Berry , 293 Or. App. at 723, 429 P.3d 1011 ("[W]e understand the 1981 legislature to have intended to protect those people who must depend on another person to meet the types of needs first addressed in 1973: 'necessary and adequate food, physical care or medical attention.' ORS 163.205(1)(a).").
The legislature next amended the statute in 1993 as part of a package of amendments proposed as House Bill (HB) 2318.[5] A summary outlining the bill stated that, among other things, it sought to add a definition of "legal duty," expand the application of the statute to "elderly persons," and expand the statute to cover "financial exploitation." Counsel Summary, House Committee on Judiciary, Subcommittee on Crime and Corrections, HB 2318, Apr. 21, 1993. A different summary from the Senate Judiciary Committee explained that "[a]lthough Oregon has a criminal mistreatment statute, it is not adequate to deal with all types of abuse, neglect, and financial exploitation suffered by the *679 elderly and dependent persons." Staff Measure Summary, Senate Committee on Judiciary, HB 2318, 1993.
The legislature was particularly concerned with financial exploitation. Representative Kate Brown described financial exploitation as "old people being stripped of their life savings and cast aside." Tape Recording, House Committee on Judiciary, Subcommittee on Crime and Corrections, HB 2318, Feb. 22, 1993, Tape 30, Side A (statement of Rep. Kate Brown). Cindy Nelson, a witness from Clackamas County Social Services who testified in support of the bill, described a scenario where a "gentleman had ingratiated himself with an elderly woman and was taking approximately $2,000 to $4,000 every month out of her savings."
We observed the legislature's concern for financial abuse in State v. Bevil , 280 Or. App. 92, 376 P.3d 294 (2016), a case that considered whether it was a violation of ORS 163.205(1)(b)(D) if a person under a legal duty to provide care accepted a voluntary gift by the elderly person. Because that summary is helpful here, we quote it at length:
" ORS 163.205(1)(b)(D) was enacted as part of a broader amendment to the criminal mistreatment statute to address the problem of elder abuse-particularly the 'abandonment and financial exploitation of elderly and dependent persons.' House Committee on Judiciary, Subcommittee on Crime and Corrections, Staff Measure Summary, HB 2318, Feb. 22, 1993. Throughout the public testimony and the workgroup meetings, those in favor of the bill specifically identified the problem of financial 'exploitation.' * * * Moreover, in each of the examples provided to the House and Senate committees, or discussed by their members, financial 'exploitation' took the form of embezzlement or other acts that were taken without the knowledge or voluntary consent of the elderly person-such as when the elderly person's competency was compromised by Alzheimer's disease or other age-related factors. E.g. , Testimony, House Committee on Judiciary, Subcommittee on Crime and Corrections, HB 2318, Feb. 22, 1993, Ex. B (statement of Pam Edens, Oregon Alzheimer's Public Policy Committee) ('Many persons make sales, target for contributions, or have possessions signed over when the person is not cognitively able to make such decisions.' * * * Testimony, House Committee on Judiciary, Subcommittee on Crime and *680 Corrections, HB 2318, Mar. 31, 1993, Ex. G (statement of Bertrand Copp) (describing the 'confidence game' whereby elderly persons are deceived by false promises that someone will care for them and are then left with nothing)."
Bevil , 280 Or. App. at 102-03, 376 P.3d 294 (emphasis added). In another case, we also recognized the legislature's intent to combat financial abuse of elderly or dependent persons. In Browning , we considered what it meant to "take" money or property for purposes of ORS 163.205(1)(b)(D). We observed:
"The history [of ORS 163.205(1)(b)(D) ] shows that the legislature was concerned about the financial exploitation of elderly persons, which could take many forms .
*63 The legislators intended to craft a statute that would cover 'the misappropriation of dollars under various guises .' Tape Recording, House Committee on Judiciary, HB 2318, Apr. 12, 1993, Tape 22, Side A (statement of Rep. Bob Tiernan). They drafted (and redrafted) the statute with the goal of making it broad enough to capture exploitative acts, but not so broad that it would also capture voluntary distributions of property by elderly persons or other persons acting in a manner consistent with a caretaking or supervisory role. See, e.g. , id . (stating that the overall approach was to make the statute broad enough to cover conduct constituting financial abuse); see also State v. Bevil , 280 Or. App. 92, 102-04, 376 P.3d 294 (2016) (describing that aspect of the legislative history)."
Browning , 282 Or. App. at 7-8, 386 P.3d 192 (emphases added).
In addition to protecting dependent people from financial abuse and other prohibited acts, the 1993 amendments defined "legal duty" broadly and expanded the application of the statute to "elderly persons." Prior to the 1993 amendments, the phrase "legal duty" was undefined, and a person "violated a legal duty to provide care for another" only when that person withheld "food, physical care or medical attention from that other person." ORS 163.205(1)(a) (1991). After 1993, however, the term "legal duty" was given the definition currently codified: a nonexclusive list of legal duties created by "familial relationship, court order, contractual agreement or statutory or case law." ORS 163.205(2)(d). Holly Robinson, Committee Counsel, explained that the purpose of this change was to "get consistency between all the *681 types of providers, as the field has changed, you've got people with legal duties and legal duties being created in a variety of ways." Tape Recording, House Committee on Judiciary, Subcommittee on Crime and Corrections, HB 2318, Mar. 31, 1993, Tape 64, Side B (statement of Committee Counsel Holly Robinson). Robinson recommended that the committee adopt the nonexclusive list of legal duties, currently codified, "given that the statute is growing."[6] Id .
In an effort to further extend the statute's protections, the legislature sought to protect not only physically dependent persons but also "elderly" persons. Prior to 1993, ORS 163.205 protected only physically dependent persons. ORS 163.205(2) (1991). The 1993 amendments extended protection to "elderly" persons, which the legislature defined as "a person 65 years of age or older" without reference to whether the elderly person was physically dependent on another person. ORS 163.205(2)(c). In other words, an elderly person need not be physically dependent on another person for physical care in order to be protected by the statute. The subcommittee heard testimony that the existing criminal mistreatment law failed to protect vulnerable people with various disorders, such as Alzheimer's, who were "dependent on others to provide care, make decisions and give protection." Testimony, House Committee on Judiciary, Subcommittee on Crime and Corrections, HB 2318, Feb. 22, 1993, Ex. B (statement of Pam Edens, Oregon Alzheimer's Public Policy Committee) (emphasis added). Robinson also explained to the House subcommittee that
"There's a class of people who are fully dependent, who need someone to feed, bathe, and clothe them, dress them, etcetera-that's what the current law applies to. On the other hand, you have a huge category of individuals who are semi-independent who may have a nurse come in twice a day and do certain activities or a foster provider who comes in and cares for them for a particular part of the day. In those situations, the current law regarding dependent *682 persons would not cover them but the broadened category and the broadened offenses would."
Tape Recording, House Committee on Judiciary, Subcommittee on Crime and Corrections, *64 HB 2318, Apr. 12, 1993, Tape 22, Side A (statement of Committee Counsel Holly Robinson). In a prior work session in the subcommittee, Robinson gave an example of a situation where an elderly person is not dependent on caretakers in the traditional sense but should nevertheless be protected:
"You've got situations of individuals who are pretty self-sufficient. I think of my grandmother who was living in an apartment where she went down for her meals and somebody came in to clean, but she pretty much was independent. In that situation, she is not a dependent person, but if somebody who was around her complex did something to her that fit within the parameters-in that situation, she is an 80 year-old woman, she clearly would not fit the dependent provision in here, but certainly due to her age is not able to respond as somebody who is 50 would."
Tape Recording, House Committee on Judiciary, Subcommittee on Crime and Corrections, HB 2318, Mar. 31, 1993, Tape 64, Side B (statement of Committee Counsel Holly Robinson). She went on to conclude that "what this [bill] does is really level the playing field in terms of types of providers, types of dependent persons, and types of offenses." Tape Recording, House Committee on Judiciary, Subcommittee on Crime and Corrections, HB 2318, Apr. 12, 1995, Tape 22, Side A (statement of Committee Counsel Holly Robinson).
At an intriguing moment, the legislature was made aware of the issue presented in this case. HB 2318 originally was a free-standing elder abuse bill that was ultimately redrafted to fit within the existing criminal mistreatment statutes. As introduced, HB 2318 used the terms "legal guardian" and those persons who had a "duty of care." Ms. Robinson recognized that there was a "significant amount of overlap between the current [criminal mistreatment] law and what [was] proposed," stating:
"There is within criminal mistreatment, first of all, language that deals with a violation of a legal duty to provide care. Criminal mistreatment 'I' also addresses the issue of *683 those persons who have assumed permanent or temporary custody, care, or responsibility. That is contrasted with the [proposed] crime of elder abuse that talks about legal guardians, persons who are lawfully charged with, or persons who are assuming a duty of care. Query whether or not these individuals are the same as a duty of care, or that have that same duty of care or legal duty. There is also a question that's not clear to me without some further thought whether or not by definition, legal guardians who don't have caretaking responsibilities, where they fit in. But there is significant overlap there. "
Tape Recording, House Committee on Judiciary, Subcommittee on Crime and Corrections, HB 2318, Feb. 22, 1993, Tape 30, Side A (statement of Committee Counsel Holly Robinson) (emphasis added). With that query posed expressly, the legislature enlarged the scope of the statute by defining "legal duty" broadly, expanded the application of the statute to "elderly persons," and criminalized "financial exploitation." Nothing in the legislative record, or the resulting text of the statute, suggests that the legislature intended the narrow interpretation that defendant urges. See, e.g. , State v. Dickerson , 356 Or. 822, 831-32, 345 P.3d 447 (2015) (although a narrow problem precipitated legislation, broader wording was adopted to address that problem); Hamilton v. Paynter , 342 Or. 48, 55, 149 P.3d 131 (2006) ("[T]he statutory text shows that, even if the legislature had a particular problem in mind, it chose to use a broader solution."); Doe v. Medford School Dist. 549C , 232 Or. App. 38, 59, 221 P.3d 787 (2009) ("The fact that a particular problem precipitated a bill does not necessarily mean that the legislature intended the enactment to be given only such meaning as will address that particular problem; often, legislatures respond to particular issues by enacting very broadly worded statutes.").
We are persuaded that the 1993 legislature intended to criminalize the financial exploitation of an elderly or dependent person by a person under a legal duty to provide care, which could include but is not limited to, a duty to serve as a faithful fiduciary when managing an elderly or dependent person's financial affairs pursuant to a power of attorney.
*65 Abusing the authority granted by a general power *684 of attorney to unlawfully take an elderly or dependent person's money or property comes within the reach of the statute's purpose to criminalize financial exploitation of elderly or dependent people by those who are under a "legal duty to provide care." The 1993 legislature was particularly concerned with "financial exploitation of elderly [or dependent] persons, which could take many forms." The legislature intended to craft a statute that would cover "the misappropriation of dollars under various guises." Those expressions indicate to us that the legislature contemplated the scenario presented by this case. Tape Recording, House Committee on Judiciary, HB 2318, Apr. 12, 1993, Tape 22, Side A (statement of Rep. Bob Tiernan); Browning , 282 Or. App. at 7-8, 386 P.3d 192 ; see Testimony, House Committee on Judiciary, Subcommittee on Crime and Corrections, HB 2318, Mar. 31, 1993, Ex. G (statement of Bertrand Copp) (describing the "confidence game" whereby elderly persons are deceived by false promises that someone will care for them and are then left with nothing).
Seen cumulatively, the legislative history of ORS 163.205(1)(b), as well as the text of the statute, do not support defendant's outdated assertion that the legislature used the phrase "legal duty to provide care" referring only to physical caretaking. Rather, the 1993 amendments gave a broader understanding of the phrase "legal duty to provide care." That "legal duty" includes other forms of "care" such as the responsibilities assumed under the general power of attorney at issue here. See Dept. of Human Services v. S. M. , 355 Or. 241, 250, 323 P.3d 947 (2014) (quoting State v. Ofodrinwa, 353 Or. 507, 529-30, 300 P.3d 154 (2013) ("Later amendments that materially change the text or context of an earlier statute can change the meaning of the earlier statute when the changed meaning is either 'expressly declared or necessarily implied.' ") ).
In this case, the evidence permitted the trial court to find that defendant had a "legal duty to provide care" to the dependent victim under ORS 163.205(1)(b) because she had a fiduciary duty under a general power of attorney to manage the victim's finances. As a trusted family member, she had the victim's confidence no less than any daily care *685 provider, and she had full authority to take any action on his behalf without his knowledge or consent. Sufficient evidence permitted the trial court to find that she violated her legal duty of care by taking or misappropriating his money or property. For those reasons, we conclude that the trial court did not err in denying defendant's motion for judgment of acquittal.
Affirmed.

The "Durable Power of Attorney" authorized defendant to "exercise all powers in [the victim's] best interests and for [his] welfare." The document gave defendant the "full power and authority to manage and conduct all of [the victim's] affairs, and to exercise [the victim's] legal rights and powers." It gave defendant authority over all the victim's financial affairs, and it included authority to make health care decisions, including terminating life-sustaining treatment.

A jury also found defendant guilty of forgery in the first degree, ORS 165.013, and theft in the first degree, ORS 164.055. The jury also acquitted defendant of one count of criminal mistreatment in the first degree and one count of theft in the second degree. Those other counts are not at issue on appeal.

The parties do not dispute that defendant's father is a "dependent" person or that defendant misappropriated her father's money and property. ORS 163.205(1)(b)(D).

In State v. Baker-Krofft , 348 Or. 655, 661 n. 4, 239 P.3d 226 (2010), the Supreme Court interpreted the meaning of the term "care" as used in ORS 163.200 and ORS 163.205. The court observed:
"Care is both a noun and a verb. See Webster's at 338 (defining both forms of the word). Care, used as a noun, means 'CHARGE, SUPERVISION, MANAGEMENT: responsibility for or attention to safety and well-being < under a doctor's ~>.' Id. Care, used as verb, means 'to give care' or to 'provide for or attend to needs or perform necessary personal services (as for a patient or a child).' Id. The former definition focuses on the relationship between the caregiver and the recipient, while the latter focuses on the nature of the care that is given or, in these statutes, withheld. Because the latter definition comes closer to the way in which the legislature used the word, we quote that definition in text."

ORS 163.205 was also amended in 2005 and in 2017. Those subsequent amendments do not affect our analysis.

Robinson also explained that the phrase "having assumed the permanent or temporary care, custody or responsibility for the supervision of a dependent person or elderly person" means "anyone who doesn't have a legal duty who is doing those things." Tape Recording, House Committee on Judiciary, Subcommittee on Crime and Corrections, HB 2318, Mar. 31, 1993, Tape 64, Side B (statement of Committee Counsel Holly Robinson).